**In re SWEPI, L.P., Kinder Morgan CO2 Company, L.P., Shell Western E & P, Inc., and Shell CO2 Company, Ltd., Relators.**

No. 01–0353.

Supreme Court of Texas.

Argued Feb. 6, 2002.

Decided Aug. 29, 2002.

Rehearing Denied Oct 24, 2002.

Marie R. Yeates, Phillip Dye, Jr., Vinson & Elkins, Houston, R. William Wood, Grace Ann Weatherly, Wood Thacker & Weatherly, Denton, Andrew McCollam, III, Gwen J. Samora, Vinson & Elkins, Houston, for Relators.

Donovan Campbell, Jr., Rader Campbell Fisher & Pyke, Dallas, Shannon H. Ratliff, Akin Gump Strauss Hauer & Feld, Austin, Gary J. Cruciani, McKool Smith, Dallas, Michael J. Whitten, Griffin Whitten Jones & Reib, Denton, Richard Kelley, McGinnis, Lochridge & Kilgore, Austin, Robert Bryan Perry, J. David Hartnett, Will Ford Hartnett, James J. Hartnett, Jr., The Hartnett Law Firm, Dallas, Marc O. Knisely, McGinnis Lochridge & Kilgore, Frank N. Ikard, Ikard & Golden, Austin, for Respondent.

Justice RODRIGUEZ delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER, Justice HANKINSON, and Justice JEFFERSON join.

Section 5B of the Probate Code authorizes a statutory probate court to transfer to itself from a district court a cause of action "appertaining to or incident to an estate pending in the statutory probate court." Tex. Prob.Code § 5B. The issue in this mandamus proceeding is whether a suit concerning royalty payments on an overriding royalty interest owned by a partnership in which a decedent and, subsequently, her estate were former partners is appertaining to or incident to the estate such that a statutory probate court may exercise its section 5B transfer jurisdiction. In this case, the statutory probate court did just that, and the plaintiffs in the transferred case sought mandamus relief. After granting a stay and hearing oral argument, the court of appeals denied mandamus relief in an unpublished memorandum opinion. We conclude that the transferred suit is not appertaining to or incident to the pending estate and that Relators do not have an adequate appellate remedy. Accordingly, we conditionally grant the writ and direct the statutory probate court to vacate its order transferring the suit under section 5B.

## I.

Margaret Bridwell Bowdle died in Wichita County, Texas, in 1976, and her will was probated there in 1977. At her death, she was a general partner in and owned an undivided one-fourth interest in Bridwell Oil Company, a partnership between her and J.S. Bridwell, her father, who owned a three-fourths partnership interest. Bridwell Oil had at one time owned certain mineral leases in the McElmo Dome area of Colorado; the leases had been assigned from Gerald Bailey. In 1975, before Margaret Bowdle's death, Bridwell Oil assigned these leasehold interests to Shell Oil, reserving a 6.25% overriding royalty interest. Since then, Bridwell Oil has owned those overriding royalty interests, which will be referred to as the Shell royalty interests.

In her will, Margaret Bowdle directed the executors and trustees of her estate to establish three trusts, one for each of her children, Bonnie Lynne Bowdle Whiteis, Alison Gale Bowdle, and Brian Lee Bowdle (now deceased). Each trust was to receive an undivided one-third share of all that remained of Margaret Bowdle's property, including her partnership interest in Bridwell Oil, after expenses and specific bequests. All three trusts have now terminated under their own terms, with the trust created for Margaret Bowdle's deceased son Brian having been distributed to his daughter Alicia L. Bowdle under the terms of the will. Thus, Margaret Bowdle's partnership interest in Bridwell Oil has passed to her descendants. After Margaret Bowdle's death, her estate ("the Estate") was a general partner in Bridwell

Oil for a period of time.[1] The current partners of Bridwell Oil include seven trusts created under the will of J.S. Bridwell, Margaret Bowdle's daughters Bonnie Lynn Whiteis and Allison Gale Bowdle, and the Alicia L. Bowdle Trust.

When she died, Margaret Bowdle also separately owned in her own name certain other mineral interests in the McElmo Dome area of Colorado. After her death, the executors and trustees of her estate assigned these separate mineral interests to Mobil, reserving a 6.25% overriding royalty interest. These overriding royalty interests, which will be referred to as the Mobil royalty interests, passed through her estate and into the three trusts established for her children in her will. When the trusts later terminated under the terms of the will, the Mobil royalty interests were distributed to the beneficiaries, Bonnie Lynne Whiteis, Alison Gale Bowdle, and Alicia Bowdle. Alicia Bowdle transferred her interests into the Alicia L. Bowdle Trust.

In 1982, the Colorado Oil and Gas Conservation Commission approved Shell and Mobil's proposal to unitize various tracts in and around the McElmo Dome area, subject to approval by eighty percent of the interest owners. The McElmo Dome Unit Agreement was ratified by the required percentage of interest owners, including Bridwell Oil, and production of carbon dioxide began in 1983. The project included constructing a 500–mile pipeline from Colorado to west Texas, so that carbon dioxide produced in Colorado could be transported to Texas and used in oil recovery operations there. Shell Oil Company was designated as the operator of the McElmo

Dome Unit, and was subsequently succeeded by SWEPI (doing business as Shell Western E & P and formerly known as Shell Western E & P, Inc.) and Shell CO2 Company, Limited (now Kinder Morgan CO2 Company, L.P.). For ease of reference, we refer to these various entities as "Shell."

In the late 1990s, several overriding royalty interest owners, including Bailey and Bridwell Oil, began questioning whether Shell and Mobil were properly calculating royalties on carbon dioxide produced from the McElmo Dome unit. They believed that Shell's and Mobil's calculations were inconsistent with a 1983 brochure proposing the unitization, and they contended that they relied on the brochure in voting to ratify the project. Because of the dispute over royalty calculations, Bailey and Bridwell Oil sued Shell in federal court in the Northern District of Texas on March 11, 1997. They claimed that Shell had underpaid them on their royalties and had filed false federal tax-related documents (Form 1099s) reflecting their royalty income. The federal court granted Shell's motion for partial summary judgment on the federal tax claim and dismissed it with prejudice. The court then declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. *Bailey v. Shell W. E & P, Inc.*, No. CA–3–97–CV–0518–R, 1998 WL 185520 (N.D.Tex. Apr.14, 1998), *aff'd*, 170 F.3d 184 (5th Cir.1999).

On June 17, 1998, Shell filed a declaratory judgment action in Harris County district court against Bailey and Bridwell Oil ("the *Bailey* suit"). Shell sought a decla-

---

**1.** Although Bridwell Oil's partnership agreement is not in the record, a "Motion for Determination of Estate's Limited Liability to Shell Partners," filed in the later proceedings in the Denton County probate court, states that Bridwell Oil's partnership agreement provided that on a partner's death, his or her personal representatives were entitled to the place of the deceased partner in the firm and to the deceased partner's partnership interest, and thus the Estate became a general partner in Bridwell Oil.

ration that it had at all times properly paid royalties to Bailey and Bridwell Oil for carbon dioxide produced from the McElmo Dome Unit. Bailey and Bridwell Oil asserted numerous counterclaims against Shell for the underpayment of royalties. The parties to the *Bailey* suit include Bailey, Bridwell Oil, and Shell. The *Bailey* suit concerns only the Shell royalty interests held by Bridwell Oil, not the Mobil royalty interests.

On December 22, 1999, Gary Shores, Frank Gibson, and John Barfield, co-trustees of the Alicia L. Bowdle Trust, Bonnie Lynn Whiteis, and others filed a class-action lawsuit in Denton County statutory probate court. That suit, which will be referred to as the *Shores* class action, is a nationwide class action filed on behalf of all nongovernmental owners of overriding royalty interests from August 24, 1982 to the present in any mineral lease that became unitized in the McElmo Dome Unit, and concerns the alleged underpayment of royalties for carbon dioxide produced from the McElmo Dome Unit. The defendants in the *Shores* class action include various Shell defendants, Mobil defendants, and Cortez Pipeline, the owner of the gas pipeline. The Denton County probate court has certified the class. The plaintiffs' petition in the *Shores* class action alleges that venue is mandatory in Denton County because the action concerns trusts, including a charitable trust (the Alicia L. Bowdle Trust) and the situs of administration of the Bowdle Trust is maintained in Denton County. *See* Tex. Trust Code § 115.002(a), (c). Shell filed a motion to transfer venue and a plea to the jurisdiction, which the probate court overruled. These issues, as well as the probate court's class certification order, are not before us in this proceeding.

After the *Shores* class action was filed, Bonnie Lynn Whiteis and Alicia Bowdle filed an application with the Wichita County Court at Law Number 2 seeking an appointment of an administrator for Margaret Bowdle's estate. The application sought to appoint Gary Shores, a named plaintiff in the *Shores* class action and the general manager of Bridwell Oil, as administrator of the Estate. The application further asserted that there was a "continued necessity for the administration of the Estate" because the Estate "owned" an unspecified cause of action and there were "lawsuits pending [the *Bailey* and *Shores* actions] that are appertaining to and incident to the Estate." The Wichita County court at law appointed Gary Shores as administrator on November 16, 2000. That same day, Shores filed a section 8(c)(2) motion under the Texas Probate Code, which permits probate proceedings to be transferred if it is in the best interests of the estate. Shores's motion explained to the Wichita County court at law that he "desire[d] to transfer the administration of the Estate to the nearest statutory probate court (which happens to be that in Denton County)" so that the Denton County probate court could exercise its jurisdiction under section 5B of the Probate Code. According to Shores's motion, the transfer would allow the Denton County probate court to transfer to itself the *Bailey* lawsuit pending in Harris County, consolidate it with the *Shores* class action, and try the actions together. The Wichita County court at law granted the section 8(c)(2) transfer motion that day. Shell does not dispute that transfer in this Court.

In the meantime, the *Bailey* lawsuit had been proceeding in Harris County. Discovery was nearly complete, and the trial judge had issued a number of rulings on Bailey's and Bridwell Oil's counterclaims against Shell. On November 28, 2000, Gary Shores, Bonnie Lynn Whiteis, and Bridwell Oil filed a motion in the Denton

County probate court to transfer the *Bailey* suit to the Denton County probate court, where Margaret Bowdle's estate was now pending, under section 5B of the Probate Code. They contended that the *Bailey* lawsuit was "appertaining to and incident to the Estate" and the transfer of the *Bailey* suit would promote judicial efficiency and economy and would be in the best interests of the Estate. Shell filed a response to the section 5B transfer motion, arguing that the requirements of section 5B were not met because the Estate had never been a party to the *Bailey* suit, no claim had been asserted by or against the Estate in the *Bailey* suit, the Estate was no longer a partner in Bridwell Oil, and the suit had already progressed significantly in Harris County. At the conclusion of the hearing, the probate court took the section 5B motion under advisement.

The probate court delayed ruling on the 5B transfer motion until after the Harris County district court denied Shell's motion for summary judgment on the remaining fraud claims in the *Bailey* suit. On March 30, 2001, the Denton County probate court granted the motion and ordered the *Bailey* suit transferred to itself under section 5B. Shell sought mandamus relief from the Second District Court of Appeals, which denied relief, and Shell then filed this petition for writ of mandamus. We granted the petition to consider whether the *Bailey* suit is "appertaining to or incident to" the Estate under section 5B and whether Shell is entitled to mandamus relief.

## II.

■ Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal. *Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex.1992). Here, our first inquiry is whether the probate court clearly abused its discretion by transferring the *Bailey* suit under section 5B of the Probate Code. This section provides:

A judge of a statutory probate court, on the motion of a party to the action or on the motion of a person interested in an estate, may transfer to his court from a district, county, or statutory court a cause of action appertaining to or incident to an estate pending in the statutory probate court or a cause of action in which a personal representative of an estate pending in the statutory probate court is a party and may consolidate the transferred cause of action with the other proceedings in the statutory probate court relating to that estate.

Tex. Prob.Code § 5B. The personal representative of the Estate is not and has never been a party to the *Bailey* suit. Thus, we must determine whether the *Bailey* suit is "a cause of action appertaining to or incident to" the pending Estate. Section 5A(b) defines "appertaining to estates" and "incident to an estate" in proceedings in the statutory probate courts and district courts:

In proceedings in the statutory probate courts and district courts, the phrases "appertaining to estates" and "incident to an estate" in this Code include the probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for trial of the right of property, all actions to construe wills, the interpretation and administration of testamentary trusts and the applying of constructive trusts, and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons.

Id. § 5A(b). Thus, a cause of action is appertaining to or incident to an estate if the Probate Code "explicitly defines it as such or if the controlling issue in the suit is the settlement, partition, or distribution of an estate." *In re Graham*, 971 S.W.2d 56, 58 (Tex.1998); *Palmer v. Coble Wall Trust Co., Inc.*, 851 S.W.2d 178, 182 (Tex.1992).

The *Bailey* suit does not fall within any of the specific examples listed in section 5A(b). Therefore, we must determine whether the "controlling issue" in the suit is the settlement, partition, or distribution of the Estate. The following facts are undisputed: The Estate has made no claims in the *Bailey* suit, and no claims have been made against it. Bridwell Oil at all times owned the Shell overriding royalty interest at issue in the *Bailey* suit, and, although Margaret Bowdle and her estate were partners in Bridwell Oil in the past, neither one is currently a partner in Bridwell Oil. Margaret Bowdle never individually owned the Shell royalty interests at issue in the *Bailey* suit, nor did her estate.

■ To determine whether the controlling issue in the *Bailey* suit is the settlement, partition, or distribution of the Estate, we look first to the pleadings in that suit. *See In re Graham*, 971 S.W.2d at 59. Shell's declaratory judgment petition states that it brought the action "to obtain a judicial determination of the proper way to calculate royalties payable to [Bailey and Bridwell Oil Company] by SWEPI." Specifically, the petition states, "SWEPI, which continues to pay Bailey and Bridwell overriding royalties on a monthly basis, seeks a judgment declaring that its method of calculating royalties payable to Defendants conforms to the contracts creating Defendants' overriding royalty interests and controlling law." For relief, Shell asked for a judgment declaring that it is entitled to calculate royalties in the man-

ner it has done so since 1984, and awarding attorney's fees and costs.

Bailey and Bridwell Oil filed numerous counterclaims. These include: (1) fraudulent inducement; (2) fraudulent concealment; (3) statutory real estate fraud; (4) negligent misrepresentation; (5) "breach of fiduciary duties, self-dealing, commingling, and constructive fraud and fraud per se"; (6) breach of contract; (7) declaratory judgment and accounting; (8) negligence and negligence per se; (9) violation of Texas Securities Act and Securities Fraud; (10) unjust enrichment; (11) money had and received and mutual and open account; (12) punitive damages; (13) civil conspiracy; and (14) attorney's fees. The relief sought includes: (1) an order that the transportation costs that Shell deducted from royalty payments made to Bailey and Bridwell Oil for the years 1984 to date were improper and that, as to all future production from the Unit, Shell shall not be permitted to deduct any transportation costs from the royalty payments made to Bailey and Bridwell Oil; (2) judgment for at least $2,057,000.00 for unpaid or underpaid overriding royalties; (3) actual, incidental, consequential, and special damages; (4) attorney's fees; (5) declaratory and legal and equitable relief, orders, constructive trusts, liens, accountings, specific performance, and other remedies; and (6) punitive damages. None of the relief sought by any party seeks to directly affect the Estate.

Nevertheless, Shores contends that the *Bailey* suit satisfies the "controlling issue" test because the suit "has a potential collateral estoppel effect on the Estate and its claims already pending in Denton [in the *Shores* class action]." He continues: "In the partnership context, Texas courts have held that actions taken on behalf of a partnership adequately represent the interest of all partners in the partnership,

thereby barring any subsequent litigation by individual partners of the same subject matter." Further, because "[c]laim preclusion may apply to bind a partner by virtue of a prior judgment against a partnership since the partner is in privity with the partnership, ... [c]ollateral estoppel could impact the Estate by virtue of its former position as a partner during periods in which the claim arose and as an assignor of its interests to other partners." Thus, Shores argues, "[s]uch a ruling could eliminate all of the Estate's claims (and all of its remaining assets), obviously directly impacts the assimilation and settlement of the final claims and assets remaining in the Estate, and therefore is appertaining and incident to the Estate."

According to an inventory filed with the probate court, Shores contends that the Estate owns the following:

Personal property and asset represented by the claims of the Estate brought in the form of Defendant Bridwell Oil Company's counterclaims in [the *Bailey* lawsuit]. The value is presently undetermined and is subject to the claims of [Shell] asserted in such action against the Defendants, including Defendant Bridwell Oil Company and the Estate's interest therein for the relevant years at issue. This property and claim are owned in common with the Estate of J.S. Bridwell, Deceased, by and through its Independent Co–Executors, as tenants-in-partnership in the Texas general partnership known as Bridwell Oil Company, with the Estate owning an undivided twenty-five percent (25%) interest in such property and claim and the Estate of J.S. Bridwell, Deceased owning an undivided seventy-five percent (75%) interest in such property and claim for the relevant years at issue.

Personal property and asset represented by the claims of the Estate, by and through the Administrator, as a member of the potential Plaintiff Class asserting claims in [the *Shores* class action] presently pending before [the Denton County probate court].

Thus, it appears that Shores is arguing that the *Bailey* suit is appertaining to or incident to the Estate because the *Bailey* suit has a potential collateral estoppel effect on the Estate's claims in the *Shores* class action and on its claims in the *Bailey* suit, which are represented by Bridwell Oil's claims and which it owns by virtue of its status as a former partner in Bridwell Oil. With regard to the Estate's "claims" in the *Bailey* suit, Shores further argues that, under the Texas Uniform Partnership Act (in effect "during the relevant time frame"), "[w]hen property is contributed to a partnership, each partner is a co-owner of each specific item of property, holding as a tenant-in-partnership[, and] ... the Margaret Estate held a tenancy-in-partnership during the time that Shell was wrongfully charging it for transportation costs, and that interest is directly impacted by the resolution of the *Bailey* suit."

Shores relies heavily on *In re Graham*, 971 S.W.2d 56 (Tex.1998), our decision construing Probate Code section 608. Section 608 is an analogous provision to section 5B that authorizes a statutory probate court to transfer to itself a matter appertaining to or incident to a pending guardianship estate. In *Graham*, we were asked to determine whether a wife's divorce proceeding against her husband was appertaining to or incident to the husband's guardianship estate. *Id.* at 59. The pleadings established that the wife requested a disproportionate share of the parties' estate, reimbursement to the community estate and to the wife's separate estate for funds used to benefit the husband's separate estate, and reimbursement

to the wife's separate estate for funds used to benefit the community estate. *Id.* The wife also sought temporary orders awarding her exclusive control of all community property, enjoining the husband's guardian from entering, operating, or exercising control over the community property, ordering the guardianship estate to pay child support, and ordering the husband's separate estate to pay interim attorney's fees. *Id.* Thus, we concluded, the divorce proceeding, which involved child support to be paid from the guardianship estate, necessarily appertained to the husband's estate because it directly impacted the assimilation, distribution, and settlement of his estate. *Id.*

*Graham* is easily distinguished from this case. In *Graham,* the relief requested in the divorce proceeding would have directly affected the guardianship estate. In contrast, no party in the *Bailey* suit seeks to directly affect Margaret Bowdle's estate. Rather, the parties in *Bailey* seek relief concerning royalty payments made to a partnership in which Margaret Bowdle and her estate are no longer partners. The Shell overriding royalty interests in dispute in *Bailey* were never owned by Margaret Bowdle or by her estate. Any interest of the Estate in the *Bailey* suit is simply in its role as a former partner in Bridwell Oil, which owned these royalty interests. Although "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership," under the Texas Uniform Partnership Act, the partner "has no right to possess such property for any other purpose [than partnership purposes]." Act of May 9, 1961, 57th Leg., R.S., ch. 158, § 25, 1961 Tex. Gen. Laws 289, 295 (expired 1999). Further, the comments to that section make clear that it "does not alter the fact that the partnership is the owner of the property." Similarly, in the Texas Revised Partnership Act, which applies to all partnerships after December 31, 1998, a partner is not a co-owner of partnership property. Tex.Rev.Civ. Stat. Ann. art. 6132b–5.01. Thus, the Estate, which is no longer a partner, has no ownership interest in the partnership property. Moreover, whatever interests Margaret Bowdle and the Estate had in the Shell royalty interests by virtue of their status as partners in Bridwell Oil have been passed to Margaret Bowdle's descendants, who are the current partners in Bridwell Oil. Thus, any recovery, or lack thereof, by Bridwell Oil in the *Bailey* suit will not affect the Estate.

The fact that no partnership property or partnership interests are currently held by the Estate also distinguishes this case from *In re Ramsey,* 28 S.W.3d 58 (Tex. App.-Texarkana 2000, orig. proceeding), on which Shores also relies. In *Ramsey,* Nita Hodges, heir of the estate of Kenneth Hodges, filed suit in district court to establish the existence of an oral partnership between Kenneth Hodges and Cecil Lesley and to wind up the partnership. She alleged that she had given notice to Lesley requesting that the partnership tender payment of the redemption price for Kenneth Hodges's partnership interest, and that Lesley acted in bad faith in refusing to tender payment. Lesley died shortly after Kenneth Hodges, and Ramsey and Chase Bank were appointed administrators of Lesley's estate. The probate court granted Chase's motion to transfer Hodges's suit to itself under section 5B. Hodges then filed for appointment of a receiver in the district court when she learned that Chase and Ramsey had filed a motion in the probate court seeking to lease real property that she alleged was part of the partnership property. Despite the probate court's transfer order, the district court continued with the suit, appointing a receiver and setting it for trial.

Ramsey and Chase Bank petitioned for writ of mandamus against the district court. The Sixth Court of Appeals granted the writ, concluding that the partnership suit was within the probate court's jurisdiction. Although the court of appeals concluded that the transfer was proper because the personal representative of the Lesley Estate was a party to the partnership suit, it also concluded that the partnership suit was appertaining to the Lesley Estate because the partnership suit affected estate property. Specifically, the court of appeals held that because the spouse, heirs, or personal representative of a deceased partner succeed to the partner's partnership interest, a suit concerning the partnership's property affects estate property. *Id.* at 63. While this is true, *Ramsey* is distinguishable from the present case because, as the court of appeals acknowledged, "Hodges had an interest in property controlled by the estate that would be affected by the administration, [and thus] she had a pecuniary interest in the probate proceedings." *Id.* at 62. Thus, Hodges sought to recover property from the partnership, but that property was held and controlled by Lesley's estate. The resolution of the partnership suit would directly affect estate property to be distributed. In this case, the partnership interest and property rights, if any, have already passed through the Estate and have been distributed, and thus the resolution of the *Bailey* suit will not affect estate property.

Shores also argues that the *Bailey* suit is appertaining to or incident to the Estate because it could potentially affect the Estate's claims in the *Shores* class action. Those claims appear to involve only the Mobil royalty interests.[2] The Estate asserts its claims in *Shores* as a prior owner of the royalty interest, during which time it received royalty payments. But the *Bailey* suit does not involve the proper calculation of the Mobil royalty interests; it involves only the Shell royalty interests. Although the resolution of the *Bailey* suit may affect the Estate's claims through the operation of collateral estoppel, which we do not decide, the *Bailey* suit itself does not seek to resolve the Estate's claims in the *Shores* class action or otherwise affect property held or controlled by the Estate. Accordingly, the "controlling issue" in the *Bailey* suit cannot be said to be the settlement, partition, or distribution of the Estate.

Thus, the *Bailey* suit is not appertaining to or incident to the Estate. Accordingly, the probate court clearly abused its discretion by transferring the suit when it lacked statutory authority.

### III.

■■■ Having determined that the probate court lacked statutory authority to transfer the *Bailey* suit and therefore its order was a clear abuse of discretion, we next consider whether mandamus is an appropriate remedy. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). Generally, mandamus relief is appropriate only upon a showing that the relator lacks an adequate remedy at law. *Id.* In addition, pleas to the jurisdiction will not ordinarily be reviewed by mandamus, because they are incidental trial rulings for which the relator generally has an adequate appellate remedy. *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990).

■■■ Shores contends that Shell's challenge is merely a jurisdictional challenge

---

**2.** To the extent those claims involve the Shell royalty interests owned by Bridwell Oil, if at all, our analysis above controls.

and thus not subject to mandamus review. Specifically, Shores argues, the probate court has the power to determine its own jurisdiction, and a court's erroneous decision may be corrected on appeal. *See Brown v. Herman,* 852 S.W.2d 91, 92 (Tex. App.-Austin 1993, orig. proceeding). What Shores overlooks, however, is that this case is much more than simply one in which a court has erred in concluding that it has jurisdiction. Here, the probate court not only erroneously concluded that it had jurisdiction, but also actively interfered with the jurisdiction of the Harris County court by taking jurisdiction away from that court through the transfer order. We have held that mandamus relief is appropriate when one court interferes with another court's jurisdiction. *See Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974) ("If the second court ... attempts to interfere with the prior action, this court has the power to act by mandamus or other appropriate writ to settle the conflict of jurisdiction."); *see also Perry v. Del Rio,* 66 S.W.3d 239, 258 (Tex.2001) (mandamus relief appropriate when one court actively interfered with the dominant jurisdiction of another court by setting its case for trial at the same date and time); *Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985) (mandamus relief was proper in *Curtis* because one court actively interfered with the jurisdiction of the other court by enjoining the court from proceeding). Accordingly, because the probate court transferred the *Bailey* suit to itself without statutory authority and thereby actively interfered with the Harris County court's jurisdiction over the case, mandamus relief is appropriate.

### IV

In sum, we conclude that the *Bailey* suit is not appertaining to or incident to Margaret Bowdle's Estate and thus the probate court lacked statutory authority to transfer the *Bailey* suit from Harris County to itself. Moreover, because the probate court transferred the suit without authority and interfered with the Harris County court's jurisdiction, mandamus relief is appropriate. Accordingly, we conditionally grant the writ and direct the probate court to vacate its order transferring the *Bailey* suit under section 5B of the Probate Code. The writ will issue only if the probate court fails to comply.

Justice O'NEILL did not participate in the decision.