

# NUMBER 13-24-00506-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF JOSE F. HERNANDEZ, DECEASED

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
## OF VICTORIA COUNTY, TEXAS



# NUMBER 13-25-00413-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE OSCAR "O.F." JONES III

---

## ON PETITION FOR WRIT OF MANDAMUS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant/relator "O.F." Jones III (appellant) challenges the county court's order dismissing his claim against the estate of Jose. F. Hernandez by petition for writ of mandamus[1] and alternatively via direct appeal.[2] Appellant argues via mandamus that the county court lacked jurisdiction to dismiss his claim. Alternatively, appellant appeals the county court's final order and argues the county court abused its discretion in dismissing

---

[1] Appellate cause number 13-25-00413-CV.

[2] Appellate cause number 13-24-00506-CV.

2

his claim as the order was "contrary to all of the evidence before the court." We deny the petition for writ of mandamus and affirm the county court's order.

## I.    BACKGROUND

This is a dispute regarding debts appellant is allegedly owed from the estate of the decedent Hernandez. Hernandez passed away on April 5, 2022. One of his heirs, Gloria Hernandez,[3] initially represented by appellant,[4] filed an application to probate Hernandez's will on May 12, 2022, which started the probate process. Appellant withdrew as Gloria's counsel after a motion to disqualify was filed. Cole Eckhoff subsequently became temporary administrator on March 6, 2023.

On May 17, 2023, appellant filed a secured claim against the estate regarding balances allegedly due on three promissory notes, each related to a separate property in Victoria. Appellant attached three notes and three deeds of trust evidencing that Hernandez had purchased all three properties from appellant and secured financing for the purchase in part by borrowing money from appellant, allowing appellant to place vendor's liens on the properties in the amount of the unpaid principal. The parties also executed deeds of trust transferring title for the properties to a third party to act as trustee until such time that Hernandez paid off the balance of the promissory notes. However, Hernandez passed prior to paying off the notes.

Appellant's secured claim sought to recover the principal balance, interest, and late fees, as well as attorney's fees and court costs incurred in seeking recovery of the principal, which the terms of the promissory notes and deeds of trust authorized. The

---

[3] Appellant claims this application was on behalf of both Gloria and Alfred Hernandez (another potential heir), but the record indicates that the application was only filed on behalf of Gloria.

[4] Appellant is an attorney and is representing himself pro se in this appeal.

3

Texas Estates Code required Eckhoff to accept or reject appellant's claim within thirty days. *See* TEX. EST. CODE ANN. § 355.051. Eckhoff failed to respond to the claim, and thus appellant's claim was rejected by operation of law on June 16, 2023. *See id.* § 355.052. Once appellant's claim was rejected, he had ninety days to file suit "on the claim in the court of original probate jurisdiction in which the estate is pending." *See id.* § 355.064(a).

However, on August 24, 2023, appellant and Eckhoff entered into a Rule 11 agreement to extend appellant's deadline to file suit to November 1, 2023, due to pending attempts to sell the subject properties. Appellant ultimately never filed a separate suit, though he contends his counterclaim in a separate proceeding constituted such suit. On September 14, 2023, the county court entered an order authorizing the sale of the three subject properties. The sale initially proceeded until disputes arose regarding the amounts appellant was claiming in his payoff statements to settle the debts. Specifically, Eckhoff and other estate heirs disputed appellant's claimed amount of attorney's fees and expenses.

The county court held a hearing regarding these issues on January 18, 2024. At this hearing, Eckhoff proposed payoff values for the properties and argued that appellant's claimed attorney's fees were improper because (1) appellant failed to timely file suit, (2) that the fees were not reasonable or necessary to secure payment of the debt as part of them were for earlier representation of Gloria, and (3) appellant was representing himself and therefore "incurred" no fees. He also argued that appellant failed to comply with proper foreclosure procedure. Appellant argued that he filed an application for foreclosure in the county court in June 2023 and later withdrew this application. He

4

also argued that Texas law does not require a secured claim in probate court when the claim involves title or possession under a vendor's lien or mortgage deed lien and that he only filed such a claim to help ensure clear title. Appellant requested relief in the form of authorization to proceed with foreclosure on the properties.

However, the parties determined during the hearing that appellant never filed the application for foreclosure as appellant claimed. Appellant then withdrew and nonsuited the entire secured claim stating he would "start over." The rest of the hearing was focused on the propriety of appellant claiming attorney's fees for his representation of two heirs in filing the initial probate application.

The county court thereafter signed an order approving the sale of one of the properties and authorized the estate to pay the debt secured by that property. Appellant presented an amended secured claim on May 7, 2024, despite appellant previously nonsuiting his secured claim, adding that he intended to seek foreclosure of the liens[5] and continuing to seek attorney's fees. The county court signed a second order later that month authorizing release of funds to appellant from the estate to pay off the debt secured by the two remaining properties. In accordance with these orders, appellant accepted payments of $30,303.40 and $39,434.40 and his liens were released. Appellant later amended his secured claim a second time, this time asserting that the payments he received were insufficient as they did not account for all of the interest and late charges due to him. Two months later, on August 21, 2024, appellant amended his claim for a third time to add exhibits.

---

[5] The record indicates Eckhoff filed a separate suit for an injunction against appellant's foreclosure, which appellant finally filed for the first time in February 2024, but this is in a separate cause not on appeal before this Court.

The county court held a hearing on August 22, 2024, regarding appellant's third amended claim. Appellant argued he was entitled to late fees and interest that were unpaid by the title company after sale of the three properties, attorney's fees and costs associated with obtaining an administrator for the estate, and attorney's fees accrued in collecting the debt. Eckhoff and an attorney for the heirs argued that appellant was not entitled to further fees or interest and instead that appellant's actions had cost the estate due to setting hearings on unripe claims and seeking attorney's fees not related to collecting the owed debts. They also argued his claims were untimely under the Estates Code. Following the hearing, the county court signed an order disallowing the remainder of appellant's claim and stated in the order that "he is entitled to no further relief from the estate." This order met the requirements of Texas Estates Code § 355.057, rendering it final and appealable. *See id*. § 355.057.

Appellant subsequently filed a motion for new trial and a request for findings of fact and conclusions of law. The county court entered findings of fact and conclusions of law. Of note, the findings included that: (1) appellant's third amended claim was not properly authenticated; (2) appellant had previously nonsuited his claim in open court; and (3) appellant's "Claim is barred by [his] failure to commence suit on the Claim not later tha[n] the 90th day after the date of rejection" by the administrator. This appeal and original proceeding followed.

## II.    ANALYSIS

Appellant advances his appellate issues as a petition for writ of mandamus and as a standard appeal. His original proceeding challenge seeks to attack the county court's order dismissing his claim on Hernandez's estate. Specifically, he argues the order was

6

void ab initio because the county court lacked jurisdiction under the Texas Estates Code. Because the mandamus challenge is jurisdictional, we address this first.

## A.      Petition for Writ of Mandamus

Appellant argues the order was void ab initio because the trial court lacked jurisdiction under the Texas Estates Code. In this regard, appellant advances a litany of confusing and, at times, contradictory arguments. He asserts that because his claims are vendor's liens on the estate—which he holds via promissory notes and deeds of trust— his claims are not "money" claims and that instead he was entitled to proceed outside the probate process to "foreclose his lien and retake possession and title to the property in fee simple." He further argues "that the probate court lost jurisdiction over the original claim when the Temporary Administrator failed to allow or reject it within thirty days of its filing, and so it was deemed rejected."

Appellant does not explain or provide authority for why the county court would lose jurisdiction other than stating that he planned to file a motion to institute foreclosure. *See* TEX. R. APP. P. 38.1(i). But the record indicates he never filed such a motion in this proceeding. Appellant additionally argues, without authority, that the legislature intended for a claim to be "severed from the ordinary Claim Docket cases" once it was rejected but does not explain how this supports his position. *See id*. He further argues that when Eckhoff filed an application for order of sale that it obviated "the necessity for [appellant] to file a similar motion to comply with [§] 355.064" but, again, provides no authority for this contention. *See id*.

Appellant then argues the parties subsequently "lost trac[k] of the status of the claim," that he "had forgotten that he had withdrawn his own Motion for Foreclosure," and

7

that, as a result, he non-suited his claim to pursue foreclosure in a separate proceeding. Appellant claims that he filed a notice of foreclosure, and that Eckhoff obtained an injunction against the foreclosure in a separate proceeding, which appellant argues was docketed incorrectly as a separate matter. Yet appellant also argues that this separate matter, county court cause number 2-21407, became the suit *required* by the Estates Code when he filed a counterclaim to Eckhoff's action seeking an injunction against foreclosure and that the filing also deprived the county court of jurisdiction in this case, ignoring that he had already missed the ninety-day statutory deadline. Regardless, county cause number 2-21407 is not before this Court, so these arguments are not relevant to the issues in this original proceeding.

In sum, appellant appears to both simultaneously argue that county court cause number 2-21407 should not have been created and, yet, that it was the only cause with proper jurisdiction when it was created while depriving the county court of its jurisdiction in this matter only. Appellant also claims that his first amended claim was in fact a whole new proceeding (despite being filed as an amendment to the still existing probate claim and still focusing on the same subject matter) and that this new claim is "somewhat like a deficiency judgment claim." We reject this contention as explained below.

Appellant's central contention and contest to the county court's jurisdiction ultimately can be compartmentalized based on his repeated citation to several key cases. Appellant's challenge boils down to a claim that he was entitled to pursue foreclosure of his vendor's lien without county court approval since such claim is not a "money" claim and that the county court did not have jurisdiction to dismiss his claims as a result. Accordingly, we focus our analysis of the original proceeding on the question of whether

8

a mandamus is appropriate to challenge the county court's jurisdiction in this manner and whether the county court lacked jurisdiction.

### 1. Standard of Review

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Alternatively, when "a trial court issues an order 'beyond its jurisdiction,' mandamus relief is appropriate because such an order is void ab initio." *In re Panchakarla*, 602 S.W.3d 536, 539 (Tex. 2020) (orig. proceeding) (per curiam) (quoting *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding)). In such circumstances, the relator need not show it lacks an adequate appellate remedy. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (orig. proceeding) (per curiam); *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605.

### 2. Appropriateness of Mandamus Challenging Jurisdiction

While mandamus relief is appropriate to address trial court orders beyond their jurisdiction, Texas law typically holds that mandamus is inappropriate for challenging a

probate court's jurisdiction. *See In re SWEPI, L.P.*, 85 S.W.3d 800, 808–09 (Tex. 2002) (citing *Brown v. Herman*, 852 S.W.2d 91, 92 (Tex. App.—Austin 1993, orig. proceeding)); *see also Panchakarla*, 602 S.W.3d at 539. This is because there is usually an adequate remedy on appeal. *Id*. at 808 (citing *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.32d 954, 955 (Tex. 1990)). An exception to that rule is when one court interferes with another court's jurisdiction. *SWEPI, L.P.*, 85 S.W.3d at 809. In cases where a probate court interferes with a district court's jurisdiction, mandamus relief is appropriate to correct a probate court improperly claiming dominant jurisdiction. *Id*.

It is a well-settled legal principle that when a party voluntarily files a claim against an estate and seeks the approval of a probate court, they cannot later challenge the jurisdiction of that court because they voluntarily submitted themselves to the probate court's jurisdiction. *Markward v. Murrah*, 136 S.W.2d 649, 652 (Tex. App.—San Antonio 1940, writ granted); *aff'd* 156 S.W.2d 971 (Tex. 1941). However, the law developed to hold that subject-matter jurisdiction can never be presumed and cannot be conferred by consent. *King v. Deutsche Bank Nat'l Trust Co.*, 472 S.W.3d 848, 851 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Therefore, even though appellant voluntarily submitted his claim in a probate court, here a statutory county court at law, the "judgment is void" if this county court lacked subject-matter jurisdiction. *Id*.

An order from a court with probate jurisdiction will only be void where the district court has "exclusive jurisdiction over a matter." *Id*. (quoting *In re CC & M Garza Ranches Ltd. P'ship*, 409 S.W.3d 106, 109 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (cleaned up)). In the present matter, the county court does "not have the jurisdiction of a statutory probate court" but shares concurrent probate jurisdiction with the constitutional

10

county court. *See* TEX. GOV'T CODE ANN. §§ 25.003(d), (f). Meanwhile, Victoria County district courts have the general jurisdiction granted to them by the Texas Constitution. *See* TEX. CONST. art V, § 8.

Considering the foregoing law, we must examine the nature of appellant's claim and the proper jurisdiction of a probate court to determine whether a district court has exclusive jurisdiction over appellant's claim. If Victoria County district courts have exclusive jurisdiction over appellant's claim, mandamus relief would be appropriate to void the trial court's order. *See King*, 472 S.W.3d at 851. But if the statutory county court could have proper probate jurisdiction, as appellant has asserted, then this becomes an issue that is not properly before this Court by way of an original proceeding. If a statutory county court can have jurisdiction, appellant voluntarily filed first in the Victoria County statutory county court at law and thus cannot collaterally attack its jurisdiction in an original proceeding. *See Markward*, 136 S.W.2d at 652.

### 3.    Jurisdiction of Probate Court

Appellant contends that only "money" claims fall under the requirements of the Estates Code and that he can proceed outside of probate jurisdiction because he is seeking to foreclose his secured vendor's liens. The Estates Code defines probate proceedings as including probate of a will, with or without administration of the estate, and actions regarding the probate of a will or estate administration including claims for money owed by the decedent. TEX. EST. CODE ANN. §§ 31.001(1), (4). Further, in counties lacking a statutory probate court such as Victoria County, the Estates Code bestows original probate jurisdiction concurrently on the county court at law and constitutional county court. *Id*. § 32.002(b). Probate jurisdiction further allows a court to "exercise

11

pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." *Id*. § 32.001(b).

Under the former probate code, original probate jurisdiction bestowed upon a trial court the ability to "transact all business appertaining to estates subject to administration" as well as "the power to hear all matters incident to an estate" including "all actions for trial of title to land . . . and for the enforcement of liens thereon." *In re Puig*, 351 S.W.3d 301, 304 (Tex. 2011). Texas courts have developed a "controlling issue" test to resolve jurisdictional disputes over matters that are not expressly named in the probate code but are potentially incident to an estate. *See id*. This test examines whether the "controlling issue" in the ancillary suit was "the settlement, partition, or distribution of an estate." *See id.* (quoting *SWEPI, L.P.*, 85 S.W.3d at 805–06). While the probate code has been recodified into the Estates Code, this Court and other sister appellate courts have continued to apply this test, or some form of it, in the context of Estates Code § 32.001(b), the closest analog to the prior probate code provisions. *See e.g. In re Estate of Rushing*, 644 S.W.3d 383, 389 (Tex. App.—Tyler 2022, pet. denied); *see also Dowell v. Quiroz*, 462 S.W.3d 578, 582–84 (Tex. App.—Corpus Christi–Edinburg Apr. 2, 2015, no pet.) (mem. op.). Pendant and ancillary claims can encompass non-probate claims. *Jurgens v. Martin*, 631 S.W.3d 385, 400 (Tex. App.—Eastland 2021, pet. denied).

Even assuming that appellant is correct that his claim is a non-probate claim, we nevertheless determine it is ancillary to probate. TEX. EST. CODE ANN. § 32.001(b). The prior probate code explicitly defined an action for trial of title to land and enforcement of a lien on land as a matter incident to estate administration. *Puig*, 351 S.W.3d at 304. While the Estates Code is not as explicit, we follow the guidance of Texas precedent and

12

common sense to determine that appellant's vendor's liens are ancillary and related to the settlement of the Hernandez estate. *See id*.; *see also Estate of Rushing*, 644 S.W.3d at 389; *Dowell*, 462 S.W.3d at 582–84. The heart of appellant's claim relates to estate property, including money owed on it, the proper titleholder of the property, and related expenses. These are all matters previously codified as pertaining to estate administration. *Puig*, 351 S.W.3d at 304.

Part of appellant's argument that the county court lacked jurisdiction is that he attempted to seek foreclosure. The appellate record lacks evidence that appellant ever underwent an actual foreclosure process. Though appellant filed a supplemental clerk's record from the other proceeding that indicates he filed foreclosure as a counterclaim, we will not consider this record as it is not properly part of this appeal, and we accordingly strike this record. But even if we assume that appellant properly presented evidence that he sought foreclosure, the probate court would still have jurisdiction. Foreclosure of a creditor's lien or security interest fixed as a preferred debt and lien, which is how appellant presented his interest in his original claim and amended claims, is under the purview of probate jurisdiction. *See e.g.* TEX. EST. CODE ANN. §§ 355.151(b), 355.156, 355.158–159.

For similar reasons, appellant's argument that his counterclaim in the other county court proceeding[6] deprived the trial court of jurisdiction in this cause of action is without merit. In fact, one of our sister court of appeals has explicitly held that a counterclaim for foreclosure, as appellant asserts he made here, is a cause of action related to a probate proceeding. *See King*, 472 S.W.3d at 854. While *King* was decided in the context of a statutory probate court which has exclusive jurisdiction of probate proceedings, the

---

[6] A separate proceeding in the *same* county court.

13

determination of what is related to a probate proceeding is still persuasive here when the statutory county court has only concurrent jurisdiction. *See id*. Such a counterclaim would still be related to the probate proceeding and we hold that the county court properly exercised jurisdiction in this matter.[7]

### 4.    Texas Rule of Civil Procedure 185

Another argument appellant asserts in support of mandamus relates to the applicability of Texas Rule of Civil Procedure 185, Suit on Account, and his contention that Eckhoff failed to comply with its requirements. He argues that "there is no reason why Rule 185 would not apply in probate claims" while providing no authority that such rule would apply in the specialized probate context. On the contrary, the Estates Code did not require Eckhoff to file a denial in the manner required by Rule 185, instead requiring only a memo to be filed with the clerk regarding the denial. *See id*. § 355.051. Further, the claim is automatically denied even if the administrator does not respond, which is another indicator that Rule 185 does not apply in the probate context. *See id*. § 355.052.

### 5.    Conclusion

Appellant argues his claim as both a claim for foreclosure and as a potential action to recover title and possession. Regardless of the form his claim takes, at best, appellant

---

[7] Appellant relies on *Walton v. First National Bank of Trenton*. 956 S.W.2d 647, 651 (Tex. App.—Texarkana 1997, pet. denied), to argue that a property claim need not be presented to an administrator and be made part of a probate proceeding. But *Walton* merely stands for the proposition that a holder of a vendor's lien has the option to avoid probate court, not that a district court has exclusive jurisdiction to resolve a vendor's lien on an estate property. *See id*. at 651–52. Further, *Walton* was decided prior to the recodification of the Estates Code, which explicitly grants a probate court jurisdiction over ancillary matters such as title to an estate property as we analyzed above. *See* TEX. EST. CODE ANN. § 32.001(b). What's more, "a party may be estopped from asserting dominant jurisdiction by its inequitable conduct." *King*, 472 S.W.3d at 853. Appellant cannot assert the district court or the second cause of action had dominant jurisdiction because he filed first in the probate court's original probate cause of action. *See id.*

has merely demonstrated that the county court has concurrent jurisdiction with other courts, whether the district court or itself. Therefore, appellant has failed to show the county court abused its discretion when it exercised jurisdiction over the claims he voluntarily presented to it and, thus, has failed to meet his burden to obtain mandamus relief. *See In re H.E.B. Grocery Co.*, 492 S.W.3d at 302; *see also Markward*, 136 S.W.2d at 652; *Puig*, 351 S.W.3d at 305; *Estate of Rushing*, 644 S.W.3d at 389; *Dowell*, 462 S.W.3d at 582–84. Accordingly, we deny the petition for writ of mandamus.

## B. Direct Appeal

Having denied appellant's mandamus relief, we now examine appellant's arguments that the county court abused its discretion when it dismissed his claim. The parties' primary disagreement in this regard relates to the Estates Code's statute of limitations. *See* TEX. EST. CODE ANN. § 355.064. The county court's findings of fact and conclusions of law stated that one reason for the dismissal of the claim was because appellant's suit was untimely filed. Failure to timely file suit would require dismissal of the entire claim. *See, e.g., In re Estate of Larson*, 541 S.W.3d 368, 375–76 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

### 1. Standard of Review and Applicable Law

"We generally review a trial court's ruling on a probate application for an abuse of discretion." *In re Estate of Gay*, 309 S.W.3d 676, 679 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Id*. Failure to analyze or apply the law correctly also constitutes an abuse of discretion. *Id*.

An estate claimant is required to first present their authenticated claim to an estate's personal representative, who must accept or reject the claim within thirty days. TEX. EST. CODE ANN. §§ 355.001, 355.051. If the representative does not timely respond to the claim, then the claim is considered rejected by operation of law on the thirtieth day. *Id*. § 355.052. Once a suit is rejected, a claimant has exactly ninety days to file suit "on the claim in the court of original probate jurisdiction in which the estate is pending." *Id*. § 355.064(a).

### 2. Discussion

Appellant initially made his claim on the estate in county court on May 17, 2023. It is undisputed that Eckhoff, the personal representative, did not timely respond to the claim, rendering it rejected on June 16, 2023. *See id*. § 355.051. Thereafter, appellant had ninety days to file suit. *See id*. § 355.064(a). Appellant and Eckhoff did enter into a Rule 11 agreement to extend the filing deadline to November 1, 2023. However, appellant still failed to file suit in county court by November 1, 2023, and thus appellant failed to meet the statute of limitations. *See id*.

Appellant concedes he did not timely file suit by November 1, 2023, but argues that when he filed his first amended claim on the estate, it restarted the deadlines because it was an entirely new claim. Notwithstanding the fact that his petition incorporates the earlier petition by reference, the Estates Code explicitly states "[t]he administration of the estate of a decedent, from the filing of the application for probate and administration, or for administration, until the decree of final distribution and the discharge of the last personal representative, shall be considered as one proceeding for purposes of jurisdiction." *Id*. § 32.001(d); *see also In re Estate of Aguilar*, No. 04-16-005030CV, 2018

16

WL 1176491, at *6 (Tex. App.—San Antonio Mar. 7, 2018, no pet.) (mem. op.) (noting this "provides all proceedings incident to a probate proceeding are considered one proceeding for purposes of jurisdiction."). Therefore, appellant's assertion that his first amended claim reset any deadlines is wrong as his claim on the estate is all considered part of the same proceeding. *See* TEX. EST. CODE ANN. § 32.001(d). Further, his first amended claim asserted the same vendor's liens and related interests as the original claim. We do not consider this a new proceeding that would reset limitations in any respect.

Citing *Lusk*, appellant also argues that the first amended claim constitutes a filing of suit pursuant to Texas Estates Code § 335.064 because he asserted a request for foreclosure therein. *See* 625 S.W.2d at 775. But *Lusk* does not establish that filing a first amended claim that included an application for foreclosure constitutes a "suit on the claim" as contemplated in § 335.064. *Id*. Instead, it discusses that the probate code statute of limitations may not apply to a separate district court action of trespass to try title. *Id*. at 776. The record does not demonstrate that appellant ever filed "suit on the claim" with respect to his first amended claim against the estate; therefore, that claim is barred. *See* TEX. EST. CODE ANN. § 355.064(a); *Estate of Larson*, 541 S.W.3d at 375–76.

We accordingly overrule appellant's issue on this point of error. Because the county court did not abuse its discretion when it dismissed appellant's untimely claim, we do not reach the remaining issues. *See* TEX. R. APP. P. 47.1. Therefore, we affirm the county court's judgment in the appeal.

### III. CONCLUSION

The Court, having examined and fully considered appellant's petition for writ of

17

mandamus, Eckhoff's response, appellant's reply, and the applicable law, is of the opinion that appellant has not met his burden to obtain relief. We lift the stay we previously imposed in this proceeding and deny the petition for writ of mandamus. We further find that the county court did not abuse its discretion when it denied appellant's claim, and, therefore, we affirm the county court's judgment. *See* TEX. R. APP. P. 52.10.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
16th day of October, 2025.

18