IN RE MCALLEN MEDICAL CENTER, INC., d/b/a McAllen Medical Center and Universal Health Services, Inc., Relator.

No. 05–0892.

Supreme Court of Texas.

Argued Dec. 5, 2006.

Dissenting Opinion May 16, 2008.

Decided Aug. 29, 2008.

Roger W. Hughes, Scott T. Clark, Craig
H. Vittitoe, Wilbert Hughes, Adams &

461

Graham, L.L.P., Harlingen, TX, for Relator.

Ramon Garcia, Law Offices of Ramon Garcia, P.C., Edinburg, TX, Brandy M. Wingate, Attorney at Law, Mission, TX, Craig Stephen Smith, Law Offices of Craig S. Smith, Corpus Christi, TX, for Real Parties in Interest.

Thomas B. Cowart, Law Offices of Thomas B. Cowart, P.C., Dallas, TX, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court, in which Justice HECHT, Justice MEDINA, Justice GREEN, Justice JOHNSON and Justice WILLETT joined.

Appellate courts cannot afford to grant interlocutory review of every claim that a trial court has made a pre-trial mistake. But we cannot afford to ignore them all either. Like "instant replay" review now so common in major sports, some calls are so important—and so likely to change a contest's outcome—that the inevitable delay of interim review is nevertheless worth the wait.

■ Although mandamus review is generally a matter within our discretion, our place in a government of separated powers requires us to consider also the priorities of the other branches of Texas government.[1] One of those is implicated here— repeated findings by the Legislature that traditional rules of litigation are creating an ongoing crisis in the cost and availability of medical care.[2] To meet this crisis, the Legislature declared that plaintiffs must support health care claims with expert reports shortly after filing,[3] something they have long had to do at trial.[4] This expedited deadline will of course never accomplish the purposes of the Texas Legislature unless it is enforced by Texas courts.

Four years ago, this Court denied several petitions seeking mandamus relief when the statutorily required reports were allegedly inadequate. The courts of appeals have disagreed since then whether this action means that mandamus review is never available in such cases—several concluding that it does,[5] and several concluding that it does not.[6] We granted the

1. *See, e.g., In re Ford Motor Co.,* 165 S.W.3d 315, 322 (Tex.2005) (holding mandamus available to protect legislative continuance); *In re Entergy Corp.,* 142 S.W.3d 316, 321 (Tex.2004) (holding mandamus available to protect exclusive jurisdiction of executive agency and prevent disruption of "orderly processes of government").

2. Tex.Rev.Civ. Stat. art. 4590i, § 1.02 (repealed 2003).

3. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001).

4. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949) ("It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to

constitute negligence and (2) that it was a proximate cause of the patient's injuries.").

5. *In re Methodist Healthcare Sys. of San Antonio, Ltd.,* No. 04–05–00304–CV, 2005 WL 1225376, at *1 (Tex.App.–San Antonio May 25, 2005, orig. proceeding [mand. pending]) (not designated for publication); *In re Schneider,* 134 S.W.3d 866, 869 (Tex.App.– Houston [14th Dist.] 2004, orig. proceeding); *In re Esparza,* No. 13–04–054–CV, 2004 WL 435241, at *1 (Tex.App.–Corpus Christi March 10, 2004, orig. proceeding).

6. *In re Clinica Santa Maria,* No. 13–06– 00256–CV, 2007 WL 677736, at *1 n. 2 (Tex. App.–Corpus Christi March 6, 2007, orig. proceeding [mand. pending]) (refusing mandamus relief but stating that availability of mandamus relief must be made on a case-by-case basis pending a definitive ruling from this Court); *In re Samonte,* 163 S.W.3d 229, 238

petition here to settle the question. We now hold that mandamus relief is available when the purposes of the health care statute would otherwise be defeated.

## I. Background

The relator hospital, McAllen Medical Center, granted credentials to Dr. Francisco Bracamontes to perform thoracic surgery at the hospital. Dr. Bracamontes got his medical education in Mexico, was licensed to practice medicine in Texas, and had completed a three-year fellowship at the Texas Heart Institute in Houston. But he was not board certified in thoracic surgery, as only physicians who have completed residencies at accredited U.S. hospitals are eligible for such certification.

In 1999, competing mass-tort cases involving treatment by Dr. Bracamontes were filed—one as a class action,[7] and this case by 400 plaintiffs representing 224 former patients.[8] As required by statute, the plaintiffs in this case submitted expert reports regarding all 224 patients, all signed by Dr. Jetta Brown. The hospital moved to dismiss on the basis (among others) that

Dr. Brown was not qualified to comment on the issues here. After sitting on the motion for four years, the trial court finally denied it. The hospital then sought mandamus relief in the Thirteenth Court of Appeals, which was denied.[9]

■ The hospital now requests mandamus relief in this Court. To be entitled to such relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal.[10] We address each in turn.

## I. Clear Abuse of Discretion

### A. Negligent Credentialing

■ In her initial reports, Dr. Brown addressed a single claim against the hospital: that it had been negligent in "hiring, retention and supervision of Dr. Francisco Bracamontes." We have held that such claims are health care liability claims.[11] Thus, they had to be supported within 180 days of filing by an expert report signed by a person with knowledge, training, or experience concerning the applicable standard of care.[12]

---

(Tex.App.–El Paso 2005, orig. proceeding); *In re Watumull*, 127 S.W.3d 351, 354–55 (Tex. App.–Dallas 2004, orig. proceeding); *In re Tenet Hosps. Ltd.*, 116 S.W.3d 821, 827 (Tex. App.–El Paso 2003, orig. proceeding); *In re Rodriguez*, 99 S.W.3d 825, 828 (Tex.App.– Amarillo 2003, orig. proceeding), *mand. denied, In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144, 149 (Tex.2004) (refusing mandamus relief but stating "a remedy by direct appeal was inadequate and mandamus would be available in a proper case."); *In re Morris*, 93 S.W.3d 388, 390 (Tex.App.–Amarillo 2002, orig. proceeding) (refusing mandamus relief but stating "because the statute expressed a specific purpose of addressing frivolous claims filed against medical practitioners by requiring dismissal if a proper expert report was not filed, a remedy by direct appeal was inadequate and mandamus would be available in a proper case."); *In re Collom & Carney Clinic Ass'n*, 62 S.W.3d 924, 928–30 (Tex.App.–Texarkana 2001, orig. proceeding).

**7.** *See McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227 (Tex.2001).

**8.** The plaintiffs here also sued Dr. Lester Dyke, Dr. Hector Urrutia, and Cardiovascular Consultants of McAllen, none of whom are involved in this proceeding.

**9.** *In re McAllen Med. Ctr., Inc.*, No. 13–05–441–CV, 2005 WL 2456602 (Tex.App.–Corpus Christi Oct.5, 2005, orig. proceeding).

**10.** *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)).

**11.** *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544–46 (Tex.2004).

**12.** *See* Tex.Rev.Civ. Stat. art. 4590i, § 13.01(r)(5)(B) (" 'Expert' means ... with respect to a person giving opinion testimony

The curriculum vitae the plaintiffs submitted for Dr. Brown was a model of brevity. It lists where she went to high school and college, but not medical school. It discloses a "general surgery internship," but not when it took place or how long it was. For employment, it shows two years practicing emergency medicine (1978–80), twenty years in solo family practice (1980–2000), five years "specializing in medical-legal issues" (1995–2000), and a "house call business in general medicine" since 2000. It lists no hospitals where she is on staff, or has been for twenty years, though in her reports Dr. Brown says she has worked as a "surgical assistant" and attended "heart catherizations" [sic] regarding some of her patients. There is nothing else in either the CV or the reports to suggest she has special knowledge or expertise regarding hospital credentialing.

■ On this record, the plaintiffs have not established Dr. Brown's qualifications. "The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances."[13] Nothing in the record here shows how Dr. Brown is qualified to address this standard. Nor can we infer that she may have some knowledge or expertise that is not included in the record.[14]

■ Moreover, "a negligent credentialing claim involves a specialized standard of care" and "the health care industry has developed various guidelines to govern a hospital's credentialing process."[15] Dr. Brown's reports contain no reference to any of those guidelines, or any indication that she has special knowledge, training, or experience regarding this process. Nor was Dr. Brown qualified merely because she is a physician; "given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question."[16]

As the plaintiffs' only reports supporting the credentialing claims against the hospital were submitted by a doctor who was not qualified for that purpose, the trial court committed a clear abuse of discretion by concluding these reports were adequate.[17]

## B. Other Causes of Action

■■ In addition to their credentialing claim, the plaintiffs pleaded that Dr. Bracamontes was the hospital's agent, and thus was vicariously liable for his negligence. This claim is viable only if the

---

about a nonphysician health care provider, an expert who has knowledge of accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.") (repealed 2003) (current version at TEX. CIV. PRAC. & REM.CODE § 74.351(r)(5)(B)); TEX.R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.").

13. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001).

14. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002) ("We cannot infer from this statement, as the Wrights ask us to, that Bowie's alleged breach precluded Barbara from obtaining a quicker diagnosis and treatment for her foot. Rather, the report must include the required information within its four corners.").

15. *Garland Cmty. Hosp.,* 156 S.W.3d at 546.

16. *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996).

17. *Am. Transitional Care Ctrs.,* 46 S.W.3d at 880.

doctor was negligent, so it too is a health care liability claim and must be supported by an expert report. But nothing in Dr. Brown's reports suggest the hospital controlled the details of his medical tasks (a requirement for hospital liability),[18] and the plaintiffs do not argue otherwise on appeal.

■ But they do argue that even if their expert reports were inadequate, dismissal would be improper as to their fraud, fraudulent concealment, civil conspiracy, and misrepresentation claims as these do not involve health care.[19] Their pleadings show otherwise. The civil conspiracy they alleged was that the defendants "conspired to commit malicious physician credentialing and fraud"; the fraud, fraudulent concealment, and misrepresentations they pleaded related to "material facts regarding Dr. Bracamontes' qualifications to perform cardiac surgery." These are simply clandestine credentialing claims.

■ Finally, the plaintiffs asserted that the hospital advertised all its heart surgeons as board certified, and sought economic damages "because Dr. Bracamontes performed cardiac surgery when he was not qualified as represented, and the Defendants failed to provide the prom-

ised quality of medical services." "Health care liability claim" does not include claims unrelated to a departure from accepted standards of medical care, health care, or safety.[20] But as the plaintiffs' advertising claims specifically related to whether Dr. Bracamontes was "qualified as represented" and attacked the "quality of medical services" they received, they were inseparable from a health care claim regarding the standards of hospital care.[21]

■ A person cannot avoid the statutory expert-report requirements by artful pleading.[22] As all the acts and omissions the plaintiff alleged against the hospital concerned its credentialing decision, they are governed by our conclusion above that their reports were inadequate.

## III. No Adequate Remedy by Appeal

■ Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review.[23] As this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories.[24]

---

**18.** *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 543 (Tex.2002).

**19.** The plaintiffs also say they alleged the hospital violated the Texas Deceptive Trade Practices Act, but no such allegations appear in their pleadings in the record before us.

**20.** Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4) (" 'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.")

(repealed 2003) (current version at Tex. Civ. Prac. & Rem.Code § 74.001(a)(13)); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 849–54 (Tex.2005); *Earle v. Ratliff*, 998 S.W.2d 882, 885 n. 10 (Tex.1999).

**21.** *Diversicare*, 185 S.W.3d at 849 (holding claim that negligent supervision caused assault was health care liability claim because it was "inseparable from the health care and nursing services provided").

**22.** *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex.2004).

**23.** *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004).

**24.** *Id.* at 137.

The most frequent use we have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved. Thus we have held appeal is not an adequate remedy when it will mean:

- forcing parties to trial in a case they agreed to arbitrate;[25]
- forcing parties to trial on an issue they agreed to submit to appraisers;[26]
- forcing parties to a jury trial when they agreed to a bench trial;[27]
- forcing parties to trial in a forum other than the one they contractually selected;[28]
- forcing parties to trial with an attorney other than the one they properly chose;[29]
- forcing parties to trial with an attorney who should be attending the Legislature;[30] and
- forcing parties to trial with no chance for one party to prepare a defense.[31]

In each of these cases, it was argued that no harm would come from the trial—perhaps the case would settle, and perhaps fee and interest awards could remedy the expense and delay of trying the case twice. But in each case we granted mandamus relief. Some fee and interest reimbursements are uncollectible, and some sunk costs (such as time taken from other work) are unrecoverable regardless. Further, a legal rule that no harm could possibly accrue to anyone so long as the attorneys get paid to try the case twice appears at least a little self-interested.

■ Of course, mandamus is generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion. But parties are not "entitled" to summary judgment in the same way they are entitled to arbitration, their chosen attorney, or an expert report like those here. Summary judgments were unknown at common law,[32] and appeared in Texas cases only with adoption of the rule in 1949.[33] Even if the merits could be decided only one way, jury trials may still be important both for justice and the appearance of doing justice. Moreover, try-

---

**25.** *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex.1992).

**26.** *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex.2002).

**27.** *In re Prudential*, 148 S.W.3d at 138.

**28.** *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex.2004); *accord, In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558 (Tex. 2004).

**29.** *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex.2005); *In re Sanders*, 153 S.W.3d 54, 56 (Tex.2004); *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 52 (Tex.1998); *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 133 (Tex.1996).

**30.** *In re Ford Motor Co.*, 165 S.W.3d 315, 322 (Tex.2005).

**31.** *In re Allied Chem. Corp.*, 227 S.W.3d 652, 658 (Tex.2007).

**32.** *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

**33.** Commentators recognize the influence of English and other states' summary-judgment procedures on Texas's rules of civil procedure:

[W]hen the Advisory Committee of the Supreme Court of Texas began its labors in 1940 on the Texas Rules of Civil Procedure, there was ample experience to warrant the recommendation of a summary judgment rule for the state.... During the following years there was persuasive advocacy of a rule authorizing summary judgment. This was rewarded in the amendments of 1949, which became effective March 1, 1950.

Roy W. McDonald, *Summary Judgments*, 30 Texas L.Rev. 285, 285–86 (1952).

ing a case in which summary judgment would have been appropriate does not mean the case will have to be tried twice— as it will if the first trial is conducted in the wrong time, place, or manner. By contrast, insisting on a wasted trial simply so that it can be reversed and tried all over again creates the appearance not that the courts are doing justice, but that they don't know what they are doing. Sitting on our hands while unnecessary costs mount up contributes to public complaints that the civil justice system is expensive and outmoded.[34]

Here, the Legislature has already balanced most of the relevant costs and benefits for us. After extensive study, research, and hearings, the Legislature found that the cost of conducting plenary trials of claims as to which no supporting expert could be found was affecting the availability and affordability of health care—driving physicians from Texas and patients from medical care they need.[35] Given our role among the coordinate branches of Texas government, we are in no position to contradict this statutory finding. If (as appears to be the case here) some trial courts are either confused by or simply opposed to the Legislature's requirement for early expert reports, denying mandamus review would defeat everything the Legislature was trying to accomplish.[36]

The plaintiffs point out that when the Legislature mandated interlocutory review of expert reports in 2003, it did not make those procedures retroactive.[37] But the Legislature's decision to forego interlocutory review of *all* pending cases in no way suggests it intended interlocutory review of *none* of them. Some appellate courts had already begun reviewing such cases by mandamus before 2003,[38] and ret-

---

34. *See* Kent D. Syverud, *ADR and the Decline of the American Civil Jury*, 44 UCLA L. Rev. 1935, 1935 (1997) ("In America today, the civil jury trial too often resembles the expensive and outmoded automobile produced by a flagging state-run industry in a once centrally planned economy. Few people buy it unless they have to, although there remain die-hard supporters, mostly among the work force on the assembly line.").

35. Tex.Rev.Civ. Stat. art. 4590i, § 1.02 (repealed 2003).

36. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001) (noting that "one purpose of the expert-report requirement is to deter frivolous claims" and that "[t]he Legislature has determined that failing to timely file an expert report, or filing a report that does not evidence a good-faith effort to comply with the definition of an expert report, means that the claim is either frivolous, or at best has been brought prematurely").

37. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws 847, 849 (current version at Tex. Civ. Prac. & Rem.Code § 51.014(a)(9)-(10)).

38. *See, e.g., In re Rodriguez*, 99 S.W.3d 825 (Tex.App.–Amarillo 2003, orig. proceeding), *mand. denied, In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144 (Tex.2004) (denying mandamus relief but stating that "a remedy by direct appeal was inadequate and mandamus would be available in a proper case"); *In re Morris*, 93 S.W.3d 388, 390 (Tex.App.–Amarillo 2002, orig. proceeding) (denying mandamus relief but stating that "because the statute expressed a specific purpose of addressing frivolous claims filed against medical practitioners by requiring dismissal if a proper expert report was not filed, a remedy by direct appeal was inadequate and mandamus would be available in a proper case"); *In re Hendrick Med. Ctr., Inc.*, 87 S.W.3d 773, 775 n. 3 (Tex.App.–Eastland 2002, orig. proceeding) (holding that the trial court did not abuse its discretion in granting a 30–day grace period, but noting that "[a]lthough we do not reach the question of whether Relators have an adequate remedy at law, see *In re Collom* ... for a discussion of this requirement for a writ of mandamus"); *In re Collom & Carney Clinic Ass'n*, 62 S.W.3d 924, 930 (Tex.App.–Texarkana 2001, orig. proceeding).

roactive application might have raised constitutional challenges to the statute that prospective application did not.[39] Moreover, for cases about to go to trial in 2003, mandating interlocutory review could have slowed disposition rather than expediting it. So we disagree that the Legislature's provision for mandatory review in future cases suggests it intended to prohibit review in cases already pending.

For many of the same reasons, we acknowledge that mandamus review should not be granted in every pre–2003 case. The statute was intended to preclude extensive discovery and prolonged litigation in frivolous cases; review by mandamus may actually defeat those goals if discovery is complete, trial is imminent, or the existing expert reports show a case is not frivolous. But if the legislative purposes behind the statute are still attainable through mandamus review, Texas courts should not frustrate those purposes by a too-strict application of our own procedural devices.

Applying those principles here, we hold that appeal would not be an adequate remedy in this case. This appears to be precisely the kind of case the Legislature had in mind when it enacted the expert report requirements. The 224 patients initially involved in this consolidated suit had nothing in common other than their doctor. The plaintiffs assert no precedent for consolidating hundreds of malpractice claims by different patients with different health problems and different courses of treatment; their only explanation is that they wanted to save money on filing fees. The hospital promptly objected to the plaintiffs' expert reports, but the trial judge refused to rule on the objection for four years, even though the hospital repeatedly reminded the judge and asked for a ruling in the interim. Meanwhile, the hospital's attorneys had to attend numerous docket calls and status conferences, and moved for summary judgment against 200 plaintiffs whose claims were barred by limitations—motions the trial court granted, but which the hospital should never have had to file. Unquestionably, the hospital could have avoided significant expense and delay had the trial court followed the law as set out in the statute; unquestionably, the hospital will continue to incur costs and delay in the future if we deny relief today. Accordingly, we hold the hospital has shown it has no adequate remedy by appeal.

This holding is not (as the dissent argues) a sudden departure from *Walker v. Packer*.[40] That case was not "seminal" as it represented not the seed of Texas mandamus jurisprudence (which stretches back almost two centuries)[41] but an effort in 1992 to prune some of its branches.[42] The seminal case was actually *Bradley v. McCrabb*, issued while Texas was still a republic, which held that mandamus was not limited to cases where there was "no other legal operative remedy," but would issue when "other modes of redress are inadequate or tedious" or when mandamus affords "a more complete and effectual

---

**39.** *See, e.g., Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 219 (Tex.2002) (noting that a retroactive statute violates Texas Constitution "if, when applied, it takes away or impairs vested rights acquired under existing law").

**40.** 827 S.W.2d 833 (Tex.1992).

**41.** *See generally* Richard E. Flint, *The Evolving Standard for Granting Mandamus Relief in the Texas Supreme Court: One More "Mile Marker Down the Road of No Return",* 39 ST. MARY'S L.J. 3, 48–94 (2007).

**42.** *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2064 (1981) (defining "seminal" as "derived from … seed").

remedy." [43]

We mentioned this "more lenient standard" in *Walker*, but found it unworkable as it "would justify mandamus review whenever an appeal would arguably involve more cost or delay than mandamus." [44] But while rejecting a standard allowing mandamus almost always, we did not adopt a standard allowing it almost never. To the contrary, we said there would be "many situations" in which mandamus would be appropriate:

> Nor are we impressed with the dissenters' claim that strict adherence to traditional mandamus standards will signal an end to effective interlocutory review for some parties or classes of litigants. There are many situations where a party will not have an adequate appellate remedy from a clearly erroneous ruling, and appellate courts will continue to issue the extraordinary writ.[45]

In describing when an appeal would be "inadequate," we listed several situations "[i]n the discovery context alone" that "*come to mind*":

- when disclosure of privileged information or trade secrets would "materially affect the rights of the aggrieved party";
- when discovery "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party";

- when a "party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error"; and
- when "the missing discovery cannot be made part of the appellate record ... and the reviewing court is unable to evaluate the effect of the trial court's error." [46]

By mentioning these instances only as ones that "come to mind," [47] the Court clearly did not limit mandamus to them. And almost immediately after *Walker* we began recognizing additional instances in which an appeal would be inadequate, including:

- when a trial court refused to compel arbitration; [48]
- when an appellate court denied an extension of time to file an appellate record; [49]
- when a trial court refused to compel discovery until 30 days before trial; [50]
- when a trial court denied a special appearance in a mass tort case; [51] and
- when a trial court imposed a monetary penalty on a party's prospective exercise of its legal rights.[52]

The problem with defining "inadequate" appeals as each situation "comes to mind" was that it was hard to tell when mandamus was proper until this Court said so. So almost four years ago we tried to de-

---

**43.** *Bradley v. McCrabb*, Dallam 504, 507, 1843 WL 3916 (Tex.1843); *see* Flint, *supra* note 41, at 49–53.

**44.** *Walker*, 827 S.W.2d at 842.

**45.** *Id.* at 843.

**46.** *Id.*

**47.** *Id.*

**48.** *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992).

**49.** *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ninth Court of Appeals*, 864 S.W.2d 58, 61 (Tex.1993).

**50.** *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex.1995).

**51.** *CSR Ltd. v. Link*, 925 S.W.2d 591, 596–97 (Tex.1996).

**52.** *In re Ford Motor Co.*, 988 S.W.2d 714, 723 (Tex.1998).

scribe the public and private interest factors that courts should balance in deciding whether the benefits of mandamus outweighed the detriments in each particular case.[53] There is no reason this analysis should entangle appellate courts in incidental trial court rulings any more than *Walker*'s *ad hoc* categorical approach. For example, some privileged or confidential matters may be so innocuous or incidental that the burden of reviewing an order to produce them outweighs the benefits of such a review; in such cases, a balancing approach would prevent entanglement while *Walker*'s categorical approach might require it. The balancing analysis we have followed for some years now merely recognizes that the adequacy of an appeal depends on the facts involved in each case.

The facts in this case do not involve delay and expense alone, as the dissent alleges. The Legislature determined that cases like this one were rendering health care unavailable or unaffordable in areas of Texas like the one where this case was filed. The Legislature's insistence that plaintiffs produce adequate expert reports is almost as old as this Court's attempt in *Walker* to define adequate appeals.[54] We disagree with the dissent that this Court's priorities should trump those adopted by the people through their legislative representatives.

## IV. Dismissal or Amendment?

■ Finally, the plaintiffs argue that if mandamus relief is granted, they are still entitled to seek an additional 30–day "grace period" from the trial court to amend their expert reports. Under the facts and statute at issue here, that option is not available.

Unlike the current statute, the statute applicable before 2003 allowed a grace period to correct inadequate reports only if the inadequacy was the result of an accident or mistake:

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection.[55]

In a motion filed the morning of the hearing on their reports, the plaintiffs requested such an extension for two reasons. First, they sought an additional 30 days to get the medical records of 11 plaintiffs, none of whom remain in the case. And as negligent credentialing caused harm to the plaintiffs only if Dr. Bracamontes's privileges should have been revoked *before* they were treated, their own medical records could not establish that claim.

Second, the plaintiffs alleged that any inadequacies in their reports were the result of accident or mistake rather than conscious indifference. In *Walker v. Gutierrez*, we held that a report that completely omitted one of the elements required by statute could not be an accident or mistake because "a party who files suit on claims subject to article 4590i is charged with knowledge of the statute and

---

**53.** *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004).

**54.** *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (requiring expert reports); Act of May 25, 1993,

73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 2347 (requiring expert reports or cost bonds).

**55.** Tex.Rev.Civ. Stat. art. 4590i, § 13.01(g) (repealed 2003).

its requirements."[56] Here, the plaintiffs' attorneys are charged with knowledge that they needed an expert in hospital credentialing, and with the qualifications (or lack thereof) of Dr. Brown. Her curriculum vitae showed she was a solo family practitioner, and revealed neither experience in hospital administration nor even staff privileges at any hospital. At the hearing on the hospital's motion to dismiss, the trial court admitted deposition testimony by Dr. Brown that she had not had staff privileges at any hospital for several years. On this record, the trial court would have no discretion to conclude that the plaintiffs thought Dr. Brown was qualified due to an accident or mistake.

\* \* \*

 Because the trial court abused its discretion in failing to grant the hospital's motion to dismiss, we conditionally grant the writ of mandamus and order the trial court to vacate its order and enter a new order dismissing the plaintiffs' claims against the hospital. We are confident the trial court will comply, and our writ will issue only if it does not.

Justice WAINWRIGHT filed a dissenting opinion, in which Chief Justice JEFFERSON and Justice O'NEILL joined.

Justice WAINWRIGHT, dissenting, joined by Chief Justice JEFFERSON and Justice O'NEILL.

*A whole new world*

*A new fantastic point of view*

*No one to tell us no Or where to go*

*Or say we're only dreaming . . .*

*It's crystal clear*

*That now I'm in a whole new world with you.*

BRAD KANE, *A Whole New World,* on ALADDIN (Disney 1992).

A whole new world in mandamus practice, hinted by opinions in the last few years, is here. The Court's heavy reliance on costs and delay to support its conclusion that the hospital has no adequate remedy by appeal marks a clear departure from the historical bounds of our mandamus jurisprudence. Because the Court's opinion in this case does not follow the standards we established in the once-seminal case of *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992), for exercising our mandamus jurisdiction, notwithstanding the merits of the case, I respectfully dissent.

I.

The Court's jurisdiction to act on interlocutory orders from trial courts is more limited than its jurisdiction to act on final judgments. *Ogletree v. Matthews,* 262 S.W.3d 316, 319 n. 1 (Tex.2007) ("Texas appellate courts have jurisdiction only over final orders or judgments unless a statute permits an interlocutory appeal.").[1] The jurisdiction to act on interlocutory orders includes areas in which the Legislature has provided for appeals of interlocutory orders[2] and instances in which the Court has decided to exercise its constitutionally recognized and legislatively defined mandamus jurisdiction.[3] "[E]xcept to enforce its

---

**56.** 111 S.W.3d 56, 62 (Tex.2003).

**1.** *See* TEX. CONST. art. V, § 3–c(a) (granting the Court jurisdiction to decide questions, *not* only cases or controversies, certified from federal courts of appeal). The Legislature may change the Court's jurisdiction over final judgments in cases or controversies and interlocutory matters.

**2.** *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a).

**3.** This Court "may issue the writs of mandamus, procedendo, certiorari and such other

own jurisdiction, the Supreme Court has only such original jurisdiction to issue writs of mandamus 'as may be specified' by the Legislature." *Pope v. Ferguson,* 445 S.W.2d 950, 952 (Tex.1969) (quoting TEX. CONST. art. V, § 3). In 1992, in *Walker v. Packer,* the Court comprehensively summarized and restated the standards for the exercise of its mandamus authority. 827 S.W.2d at 839–44. As Chief Justice Phillips explained, the basic standards for mandamus relief date back to the 1901 case of *Aycock v. Clark,* 94 Tex. 375, 60 S.W. 665, 666 (1901), and before. *Id.* at 841 n. 8; *Pope,* 445 S.W.2d at 953; *cf. Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (Tex.1959) (In the 1950s the mandamus writ was modified to allow correction of clear abuses of discretion by trial courts instead of limiting the writ to compelling performance of a ministerial duty or act.).

Mandamus is an extraordinary writ that should issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker,* 827 S.W.2d at 840 (quoting James B. Sales, *Original Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas, in* APPELLATE PROCEDURE IN TEXAS § 1.4(1)(b) at 47 (Orville C. Walker 2d ed., 1979)). We established two pillars as predicates for exercise of this extraordinary writ. Where a trial court's order is a clear abuse of discretion and there is no adequate remedy on appeal, the aggrieved party need not wait for a final judgment to seek judicial review of the decision. *Walker,* 827 S.W.2d at 839; *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984) ("A general

requirement for a writ of mandamus is the lack of a clear and adequate remedy at law, such as a normal appeal."); *Pope,* 445 S.W.2d at 953 ("[W]e have consistently refused to issue writs of mandamus ... when the party applying has an adequate remedy by appeal."); *Aycock,* 60 S.W. at 666 (adopting the no adequate remedy by appeal requirement from *Ex parte Newman,* 14 Wall. 152, 81 U.S. 152, 165, 20 L.Ed. 877 (1872), which stated no writ will "be issued in any case if the party aggrieved may have a remedy by writ of error or appeal"). The first requirement continues to be viable—there must be a clear abuse of discretion by the trial court. *In re Living Cts. of Tex., Inc.,* 175 S.W.3d 253, 255–56 (Tex.2005); *Walker,* 827 S.W.2d at 839 (writ of mandamus corrects a "clear abuse of discretion"). The second requirement for granting mandamus relief, the inadequacy of an appeal, has been the focus of debate for the entire life of *Walker,* especially in recent years as it has inhaled increasingly difficult gasps of breath to avoid succumbing to extinction in the traditional world of mandamus practice. *See, e.g., In re Allied Chem. Corp.,* 227 S.W.3d 652, 663–67 (Tex.2007) (5–4 decision) (Jefferson, C.J., dissenting); *id.* at 667 (Wainwright, J., dissenting); *In re Ford Motor Co.,* 988 S.W.2d 714, 724–27 (Tex.1998) (Baker, J., concurring and dissenting).

Until recently, we defined an inadequate remedy on appeal as a circumstance in which waiting for a final appealable judgment in a case would deprive the aggrieved party of substantial rights or result in a legal error that the appellate

---

writs, as may be necessary to enforce its jurisdiction. The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified." TEX. CONST. art. V, § 3. The Court may issue writs of "manda-

mus agreeable to the principles of law regulating those writs, against ... any officer of state government except the governor, the court of criminal appeals, or a judge of the court of criminal appeals." TEX. GOV'T.CODE § 22.002(a).

court would be unable to correct. *In re Kansas City S. Indus., Inc.,* 139 S.W.3d 669, 670 (Tex.2004); *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (Tex.1958) (Interference in the normal trial and appellate process by mandamus "is justified only when parties stand to lose their substantial rights."). Deprivation of substantial rights would occur if waiting for an appeal would vitiate or severely compromise a party's ability to present a viable claim or defense at trial,[4] or privileged and confidential information would be disclosed. *Huie v. DeShazo,* 922 S.W.2d 920, 928 (Tex.1996). Appellate courts would be unable to cure such errors after a final judgment, causing irreparable harm to the aggrieved party and, importantly, wasting judicial resources. *Walker,* 827 S.W.2d at 843 (The trial court's ruling is an "effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources."). This *was* the vaunted "no adequate remedy by appeal" requirement, which *Walker* explained was a " 'fundamental tenet' of mandamus practice." *Id.* at 840 (quoting *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989)); *see Pope,* 445 S.W.2d at 954 ("[A] writ [of mandamus] positively will not issue ... [where] there is an adequate remedy by appeal for correction.").

In *Walker,* we reviewed several of our precedents in which we issued writs of mandamus without addressing this fundamental tenet and expressly disapproved of them "and any other authorities to the extent they might be read as abolishing or relaxing" the no adequate remedy on appeal requirement. *Walker,* 827 S.W.2d at 842 (expressly disapproving of *Barker v.*

*Dunham,* 551 S.W.2d 41 (Tex.1977) and *Allen v. Humphreys,* 559 S.W.2d 798 (Tex. 1977)).

Laboring to establish predictable standards to guide Texas appellate courts in determining whether an adequate remedy by appeal existed, we expressly excluded certain burdens in litigation from satisfying the no adequate remedy standard. An appellate remedy is not inadequate "merely because it may involve more expense or delay than obtaining an extraordinary writ." *Id.* at 842. In previous cases, we explained that "the cost and delay of pursuing an appeal will not, in themselves, render appeal an inadequate alternative to mandamus review." *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex.1990); *Iley,* 311 S.W.2d at 652 ("[D]elay in getting questions decided through the appellate process ... will not justify intervention by appellate courts through the extraordinary writ of mandamus.").

The no adequate remedy by appeal condition serves important purposes. While we lamented the substantial fees and costs of litigation and the significant delay that could be incurred waiting for the opportunity to appeal, we noted that every erroneous ruling would create these burdens, and mandamus would not lie to correct every one as it would cause substantial disruption to the trial process. *Walker,* 827 S.W.2d at 842. This limitation on the exercise of mandamus jurisdiction prevented appellate courts from becoming entangled in the myriad of routine rulings made by trial courts in every case before entry of an appealable order. *Id.* Trial courts could then manage their dockets and preside over trials without repeated delays in judicial proceedings. *Id.* Moreover, the

---

4. *See Nat'l Med. Enters. v. Godbey,* 924 S.W.2d 123, 133 (Tex.1996) (disqualification of counsel); *Able Supply Co. v. Moye,* 898 S.W.2d 766, 772 (Tex.1995) (denial of discovery); *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 12 (Tex.1994) (outcome determinative sanctions).

adequate remedy standard curbed the potential deluge of appellate cases that could be raised by hard-charging parties to increase the expense and the stakes in the case.

We have recognized, however, that harm to the judicial system, affecting our constitutional obligation to oversee the administration of justice and the rights of all Texans to a fair and efficient judicial system, is a basis for acting by mandamus. On that basis, we held, for example, that appeal is an inadequate remedy when one Texas court issues an order that directly interferes with another Texas court's jurisdiction. *In re SWEPI, L.P.*, 85 S.W.3d 800, 809 (Tex.2002); *Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex.2001). We also acted by mandamus when thousands of potential claimants seeking personal jurisdiction in Texas courts would exact a significant cost to the judicial system that it need not bear. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596–97 (Tex.1996). Times have changed as today this Court reverses itself. The cost and delay to the parties in this case is the very basis on which the Court concludes there is no adequate remedy by appeal. 275 S.W.3d at 465.

The Court extended *Walker* and the established tenets of mandamus review to their logical limits in *In re AIU Insurance Co.*, 148 S.W.3d 109 (Tex.2004) and *In re Prudential Insurance Co. of America*, 148 S.W.3d 124 (Tex.2004). One may reasonably view these two cases as expanding the application of *Walker's* standards. More than mere delay in time and incurred litigation expense was necessary for the Court to act under its mandamus authority in both cases. The inadequate remedy on appeal tenet in *In re AIU* was based on the failure of the trial court to enforce a

venue provision in a commercial agreement, when such failure would have forfeited for all time the contract rights the relator purchased and on which the parties agreed. 148 S.W.3d at 115. Once tried in Texas, contrary to the venue provision, it would be impossible for the relator to receive the benefit of its bargain that any dispute would only be tried in New York. *Id.* at 117–18. *In re Prudential* held that mandamus was proper when the trial court denied a party's attempt to enforce a contractual waiver of a jury trial. 148 S.W.3d at 138–39. In these cases, proceeding to trial as the real party in interest would be a waste of judicial resources and a forfeiture of substantial rights. *See Walker*, 827 S.W.2d at 843; *In re AIU Ins. Co.*, 148 S.W.3d at 117 ("Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment. There is no benefit to either the individual case or the judicial system as a whole."); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 138 ("If Prudential were to obtain judgment on a favorable jury verdict, it could not appeal, and its contractual right would be lost forever" because "[e]ven if Prudential could somehow obtain reversal based on the denial of its contractual right, it would already have lost a part of it by having been subject to the procedure it agreed to waive.").

The Court creates a whole new world today, jettisoning the well-established precept that delay and expense alone do not justify mandamus review.[5] While such costs are undesirable and should be avoided when appropriate, the requirement of an inadequate remedy on appeal served as a check on appellate entanglement in inci-

---

5. The Court recites that the expert reports at issue addressed the claims of 224 patients. However, only ten patients were real parties

when the petition was filed in this Court and only eight patients remain in this proceeding.

dental trial rulings and as a guide to the bench and bar on when to seek mandamus review.

## II.

In this case, relator filed a motion to dismiss under former article 4590i of the MLIIA for failure to file an adequate expert report, which the trial court denied. Tex.Rev.Civ. Stat. art. 4590i § 13.01(d). Defendants were not entitled to an interlocutory appeal of a trial court's denial of a motion to dismiss under former article 4590i. Although the Legislature later provided an interlocutory appeal for some denials of motions to dismiss, that right only applies to cases filed after September 1, 2003. Tex. Civ. Prac. & Rem.Code § 51.014(a)(9); *see Lewis v. Funderburk,* 253 S.W.3d 204, 207 (Tex.2008). Because this case was filed prior to that date, an interlocutory appeal is not available, and relator seeks mandamus relief from the trial court's order. The Court previously had the opportunity to decide whether to address the question of dismissal of medical malpractice cases by mandamus. *See In re Woman's Hosp. of Tex.,* 141 S.W.3d 144 (Tex.2004) (Owen, J., concurring in part and dissenting in part to the denial of the petitions).

In a vigorous dissent to the denial of several petitions, Justice Owen, joined by Justice Hecht and Justice Brister, wrote, "I would grant mandamus relief in health care liability cases that remain governed by former article 4590i when an expert report fails to meet the statutory require-ments and the trial court has nevertheless refused to comply with governing law that requires dismissal of the case." *Id.* at 147.[6] The dissent acknowledged the 2003 Legislature's decision to grant interlocutory review only prospectively for some denials of defendants' motions to dismiss. *Id.* at 148. The dissent argued that the purpose of the expert report requirement and the legislative decision to grant interlocutory review prospectively only were not indications "that the Legislature intended for courts to deny mandamus relief in medical liability cases filed before that date," but reflections of the Legislature's intent that courts grant mandamus relief in former article 4590i cases and apply a narrower scope of review in new cases subject to the interlocutory appeal provisions. *Id.* Notwithstanding these arguments, a majority of the Court decided to deny mandamus relief. I respectfully declined to join the dissent's position as to our mandamus jurisdiction then and continue to disagree with that position as now articulated in the Court's opinion only a few years later.

So the Court's opinion today is based neither on legislative intent, nor on judicial precedent.[7] It is, simply, the introduction of a whole new world in mandamus practice, perhaps foreshadowed by steps in this direction in the *In re Allied Chemical, In re Prudential,* and *In re AIU* opinions. While *In re Prudential* and *In re AIU* represented perhaps the endpoints of *Walker's* logic, in the new world *In re*

---

**6.** It remains an open question whether a denial of a motion to dismiss under the MLIIA's expert report requirement is reviewable on appeal after a final judgment on the merits. *See Villafani v. Trejo,* 251 S.W.3d 466, 471 n. 2 (Tex.2008) (holding that the denial of a motion to dismiss under the MLIIA is reviewable after a nonsuit but noting that a motion for sanctions under the MLIIA may not al-ways be reviewable on appeal after a final judgment).

**7.** The Legislature has the authority to make and change the avenues for and timing of appellate review of these interlocutory orders. The Court misconstrues my position on the propriety of the Legislature to make policy.

*Prudential* and *In re AIU* are just the beginning.

*In re Prudential* and *In re AIU* were still tethered to *Walker,* and they assiduously endeavored to explain the inadequacy of an appeal. In this case, the Court merely cites this standard and then summarily rejects the clear rule affirmed in many cases—that the delay and expense of pursuing an appeal do not justify mandamus review. 275 S.W.3d at 468; *see, e.g., Walker,* 827 S.W.2d at 843; *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 60 (Tex.1991); *Bell Helicopter Textron, Inc.,* 787 S.W.2d at 955; *Iley,* 311 S.W.2d at 652. The opinion in this case signals a new mandamus jurisprudence not tied to the check against reviewing incidental trial court rulings. As the Court says, it will act on mandamus petitions when "some calls are so important" and sufficiently incorrect that they move the Court to action, notwithstanding the former limitations imposed by the requirement that there be no adequate remedy by appeal. 275 S.W.3d at 461.

There are egregious cases that compel action by mandamus on grounds that may not fit neatly within the traditional mandamus standards established by our precedents. Such cases should be the exception; they may now have become the rule. Because the Court abandons important tenets in our traditional mandamus practice and is not authorized to act by section 22.002 of the Texas Government Code on the interlocutory trial court order, I respectfully dissent.