Opinion filed October 8, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed October 8, 2009

 

 

 

 

                                                                        In The

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00036-CV

                                                     __________

 

                               
HENDRICK MEDICAL CENTER, Appellant

                                                           
vs.

                            
GEORGE CONGER, INDIVIDUALLY AND IN
THE 

                                  
ESTATE OF MONA CONGER, Appellee

 



                                 On Appeal from the 42nd District Court                             

                                                        
Taylor County, Texas

                                                  
Trial Court Cause No. 46656-A



                                                                   O
P I N I O N 

In
this health care liability claim, Hendrick Medical Center believed that the
expert report filed by George Conger for himself and for the estate of Mona
Conger was inadequate, and it filed a motion to dismiss in accordance with the
provisions of Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(b)
(Vernon Supp. 2008).  The trial court disagreed with Hendrick and denied the
motion.  We reverse and remand.








Hendrick
challenges the trial court=s
ruling with two issues.   First, Hendrick takes issue with the trial court=s failing to dismiss George
Conger=s claim because
he filed an insufficient expert report.  In its second issue, Hendrick asserts
that the trial court should have dismissed the vicarious liability claims filed
by Conger because the expert report that he filed was insufficient as to those
claims.

Mona
Conger died after having cardiac bypass surgery at Hendrick.  Mona Conger
underwent the procedure after testing performed upon her revealed multi-vessel
disease.  

Following
Mona Conger=s death,
George Conger sued Hendrick alleging that Mona Conger=s right subclavian artery had been lacerated
during central line placement related to cardiac bypass surgery.  George Conger
asserted that the laceration resulted in a pleural hematoma and ultimately led
to her death.  Conger also sued the physician who performed the surgery.  The
physician is not a party to this appeal.

In
his claim against Hendrick, Conger generally says that Hendrick, by and through
its agents, employees, vice-principals, and borrowed servants, failed to use
the ordinary care that a reasonable and prudent organization in like
circumstances would have used in the treatment of Mona Conger.  Conger further
generally alleges that Hendrick breached that standard of care by Afailing to develop, employ,
monitor, and follow appropriate policies and procedures with regard to the
assessment, treatment, management and oversight of patients@ like Mona Conger.  Conger
also claimed generally that Hendrick failed Ato
train, employ, retain, supervise, and provide appropriate personnel to carry
out@ those polices and
procedures.  AFurthermore,
Hendrick Medical Center is vicariously liable under respondent [sic] superior
for the acts and omissions of it=s
[sic] employees.@








Specifically,
Conger said that Hendrick should have had policies and procedures that
addressed the timely interpretation of X-rays that were taken in the Intensive
Care Unit following surgery.  It also should have had policies and procedures
that addressed the importance of monitoring persons like Mona Conger for
complications resulting from bypass surgery.  Conger alleged that the standard
of care would require those policies and procedures and that Hendrick breached
that standard by not having them.  Finally, he says that the breach directly
caused Mona Conger=s
death.       When a party files a medical malpractice action, he must serve an
expert report within 120 days of the filing of the petition.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon Supp.
2008).  The report must be authored by an expert.  An expert is one who is
shown to be qualified by reason of knowledge, skill, training, experience, or
education to address the claim. Tex. R.
Evid. 702. Additionally, in order to qualify as an expert to opine on
the breach of a standard of care, where the defendant is not a physician, the
author must show that he meets the qualifications set forth in Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(5)(B) (Vernon
Supp. 2008).

The
proponent of an expert report has the burden to show that the expert is
qualified.  Broders v. Heise, 924 S.W.2d 148, 151-52 (Tex. 1996).   The
expert report must provide a fair summary of the expert=s opinion regarding the applicable standard of
care, the manner in which the care rendered failed to meet the standard, and
the causal relationship between the failure to meet the standard and the
injury.  Tex. Civ. Prac. & Rem. Code
Ann. '
74.351(r)(6) (Vernon Supp. 2008).  When the writer of a report merely states
the expert=s
conclusions about the standard of care, breach, and causation, the report does
not meet the purposes of the statute.  Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001).   If the author of the
report omits any of the statutory requirements, the report does not constitute 
a good faith effort to comply with the statute.  Id. 

A
trial court must dismiss a health care liability claim if it determines that
the report does not represent a good faith effort to comply with the
requirements of the statute.  See Jernigan v. Langley, 111 S.W.3d 153,
156 (Tex. 2003); Simonson v. Keppard, 225 S.W.3d 868, 871 (Tex. App.CDallas 2007, no pet.). 
However, if a trial court deems that a timely report is deficient, it has the
discretion to grant one thirty-day extension during which the proponent of the
report can attempt to cure the deficiency.  Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(c) (Vernon Supp. 2008).

When
Conger filed his petition, he attached a medical report by Dr. Steven
Thompson.  Later, Conger filed an amended report from Dr. Thompson.  Conger
also filed a report from a nurse, Carrie S. Upton.  Hendrick filed a
motion to dismiss as provided for by Section 74.351(b).  The trial court denied
the motion, and this appeal followed.

A
trial court=s decision
to deny a motion to dismiss based on Section
74.351(b) is reviewed for an abuse of discretion.  Bowie Mem=l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002).  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex. 1985).








First,
Conger claims that this court has no jurisdiction to hear this appeal.  The
court=s decision in Lewis
v. Funderburk, 253 S.W.3d 204, 207-08 (Tex. 2008), has resolved that issue,
and we have jurisdiction to entertain this interlocutory appeal.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(10) (Vernon 2008).

In
its motion to dismiss, Hendrick pointed out to the trial court that the report
of Nurse Upton had been served more than 120 days after the petition was filed
and was, therefore, not timely.  When the trial court denied the motion to
dismiss, it denied the motion in its entirety.  Therefore, it denied Hendrick=s claim that Nurse Upton=s report was not timely. 
Hendrick claims that that denial was error. The record shows that Conger served
Nurse Upton=s report
more than 120 days after the petition was filed; it was not timely.  See
Section 74.351(a).  Hendrick=s
complaint is sustained.  The only timely report before the trial court and this
court is the amended report from Dr. Thompson.

An
Aexpert report@ is a written report by an
expert that provides a fair summary of the expert=s
opinions as of the date of the report regarding (1) applicable standards of
care, (2) the manner in which the care rendered failed to meet the standards,
and (3) the causal relationship between that failure and the injury, harm, or
damages claimed.  Section 74.351(r)(6).  The report must be signed Aby a person with knowledge,
training, or experience concerning the applicable standard of care.@  In re McAllen Med.
Ctr., Inc., 275 S.W.3d 458, 462 (Tex. 2008); see also  Section 74.351(r)(5)(B). 
AThe standard of care
for a hospital is what an ordinarily prudent hospital would do under the same
or similar circumstances.@ 
McAllen Medical, 275 S.W.3d at 463 (citing  Palacios, 46 S.W.3d
at 880).

Hendrick
complains that Dr. Thompson=s
report is deficient for several reasons, one of which is that he is not shown
to be qualified to render an expert opinion on any of the claims against it.

Dr.
Thompson=s report
shows that he is board certified in internal medicine and that he is an
emergency room physician.  He has been an intensive care unit Aattending@ and was also an emergency
room medical director.  Finally, at the time his report was written, Dr.
Thompson was the director of hospitalists and the emergency room physicians at
a hospital in Dallas.








Dr.
Thompson states in his report: AI
am familiar with the diagnosis and treatment of post-operative patients.  Thus
by education, training and experience I am qualified to render an expert
opinion in this matter.@ 
He does not say that he is familiar with the formulation of policies and
procedures by hospitals in the ICU setting similarly situated to that situation
or circumstance of Hendrick.  In his petition, Conger=s direct liability claims against Hendrick are
limited to its alleged failures in regard to formulation of policies and
procedures.

As
to the standard of care applicable to Hendrick, Dr. Thompson opines in his
report:

The
standard of care for a hospital intensive care unit (ICU) is to provide the
safest possible medical outcome for their patients.  Specifically, the standard
of care for Hendrick Medical Center is to ensure that x-rays are read and
interpreted in a timely manner.  Timely manner in the ICU setting is
immediate.  Policies and procedures should have been implemented to create a
reproducible pattern to reduce the likelihood that mistakes will be made. 
Hendrick Medical Center breeched [sic] the standard of care by failure to have
policies and procedures in place that would have ensured the timely
interpretation of the chest x-ray performed in the Intensive Care Unit. 
Specifically, the standard of care was breeched [sic] since the chest x-ray was
not read or interpreted in a timely manner.

 

Dr. Thompson
also stated:

 

Furthermore, either the
radiology technician or the ICU staff should have made a cursory review of the
chest x-ray.  There was a breech [sic] in the standard of care by Hendrick
Medical Center employees since nobody reviewed the chest x-ray.  The interval
change in the chest x-ray would have been obvious to the radiology technician
or the ICU Staff.  Hendrick Medical Center should have had policies and
procedures in place to ensure x-rays are read and interpreted in a timely
manner, especially in the ICU setting.

 

Hendrick
argues that it is not established within the four corners of the report that
Dr. Thompson has any familiarity, training, or experience that would allow
him to opine as to the standard of care in formulating policies and procedures
at the hospital level in the ICU.  We agree. 

Dr.
Thompson=s
qualifications must be shown within the four corners of the report.  Palacios,
46 S.W.3d at 878.  The report shows his experience as a board certified
internist, an emergency room physician and director, an ICU Aattending,@ and director of
hospitalists and emergency room physicians.  Dr. Thompson said nothing in the
report about his knowledge, training, or experience concerning the applicable
standard of care involved here B
the formulation of hospital policies and procedures in an ICU setting.   He has
not shown himself to be qualified to render an opinion on Awhat an ordinarily prudent
hospital would do under the same or similar circumstances.@  McAllen Medical,
275 S.W.3d at 463 (citing Palacios, 46 S.W.3d at 880).








While
Dr. Thompson may be qualified to testify as an expert in other areas, we are
confined to the four corners of the report, and it is not shown within the four
corners of his report that Dr. Thompson is an expert qualified to give an
opinion on what an ordinarily prudent hospital would do under these or similar
circumstances.  See Reed v. Granbury Hosp. Corp., 117 S.W.3d 404, 410-11
(Tex. App.CFort Worth
2003, no pet.) (record did not show that purported expert had Aany special knowledge about
what protocols, policies, or procedures a hospital of ordinary prudence, with
the Hospital=s
capabilities, would have had in place@).
 Dr. Thompson=s report
is, therefore, deficient as to the direct health care liability claims against
Hendrick.

Conger
also filed vicarious health care liability claims against Hendrick.  It asserts
that Dr. Thompson=s
report fails to name any of the employees for which Conger claims Hendrick is
responsible.  The report also fails to name the occupation or job descriptions
of those alleged to bind Hendrick vicariously except to say, A[E]ither the radiology
technician or the ICU staff should have made a cursory review of the chest
x-ray.@  Again, we
agree with Hendrick.  Not only has Dr. Thompson not set forth his
qualifications to give an opinion on the standard of care applicable to
radiology technicians and ICU staff, but he also does not say who these people
are, what their duties were, why he is familiar with the standard of care
applicable to the various persons involved, or what the standard of care is for
each different position.  He simply gives his opinion that they should have
read the X-ray, they did not, and it caused Mona Conger=s death. Without setting out at least the job
descriptions of those involved in this case (and we are not to be taken as
holding that would be enough to satisfy the statute) and for whom and why
Hendrick is alleged to be responsible, it would be impossible for Dr. Thompson
to state the standard of care applicable to those persons and that he was
qualified to give an expert opinion on that standard of care.  There is no
attempt within the four corners of the report to show that Dr. Thompson had
knowledge, training, or experience concerning the standard of care, in an ICU
setting, applicable to any member of the staff who might have been involved in
the treatment of Mona Conger.  Standing alone, the fact that Dr. Thompson is
shown to be a physician does not show him to be qualified as an expert with
respect to all health care providers.  Broders, 924 S.W.2d at 153.  For
the reasons we have stated, the report as to the vicarious liability claims
against Hendrick is deficient.








Hendrick
argues that there are other reasons why the trial court should have sustained
its objections.  It argues that, even if Dr. Thompson had been shown to be
qualified on the standards of care, his opinions on the breach of those
standards of care and the relation of the breach to the cause of death are conclusory. 
We agree.  A conclusory statement is one that expresses a factual inference
without stating the underlying facts on which the inference is based.  Arkoma
Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd., 249 S.W.3d 380, 389
n.32 (Tex. 2008).

Dr.
Thompson stated that Hendrick should have implemented policies and procedures
to Areduce the
likelihood that mistakes will be made.@ 
He opines that Hendrick breached that standard of care by failing to have those
policies and procedures in place.  However, he does not say that he had ever
examined the policies and procedures at Hendrick as they relate to the ICU or
radiological setting or how he knew that they had no such policies and
procedures in place; he simply declares that Hendrick should have had them but
did not and that that breach brought about a long chain of medical problems
that, one upon the other, ultimately caused Mona Conger=s death.  Dr. Thompson expresses factual
inferences without stating the underlying facts upon which those inferences are
based.  See id.

The
same is equally true as to the vicarious claims against Hendrick.  Dr. Thompson
conclusively states that, if the radiology technician or someone else in the
ICU had reviewed the X-ray earlier, Mona Conger could have been returned to
surgery earlier and the same long chain of medical problems, one upon the
other, would not have occurred and would not have caused Mona Conger=s death.  Again, Dr.
Thompson expresses factual inferences without stating the underlying facts upon
which those inferences are based.  See id.








Hendrick
also argues that our decision in Barko[1]
requires that Dr. Thompson eliminate the heart surgery or heart disease as the
cause of the cardiac arrest that precipitated the chain of medical events prior
to Mona Conger=s
death.  In Barko, the claimant had a prior back surgery.  She reinjured
her back and went to an emergency room.  Dr. Genzel, the physician against whom
the health care liability claim was filed, examined her, prescribed pain
medication, and advised her to see her neurosurgeon.  She later returned to the
emergency room, was given more medicine, and again told to see her
neurosurgeon.  We held that a medical report in that case was deficient for a
number of reasons.  As to one of those reasons, we said:  

[T]he reports do not
indicate that appellant would have satisfactorily recovered from the back
injury but for Dr. Genzel=s
alleged negligence.  The reports do not state that back surgery would have been
avoided without Dr. Genzel=s
alleged negligence.  Furthermore, the reports make no attempt to eliminate
either the back injury itself or the attempt to surgically repair it as a
potential cause of the permanent neurological damage.

 

Barko,
123 S.W.3d at 460-61.

For
all of the reasons we have discussed, we hold that the report is deficient to
support either the direct health care liability claims or the vicarious
liability claims.  Hendrick=s
first and second issues are sustained.

Hendrick
has asked us to hold that the report as to the vicarious liability claims is so
deficient that it is tantamount to no report.  We decline to make that
holding.  See Ogletree v. Matthews, 262 S.W.3d 316, 320, 321 (Tex. 2007)
(Expert report did not mention Dr. Ogletree=s
name, but his conduct was implicated.  The report was deficient, not absent,
and the trial court could grant an extension).

The
Texas Supreme Court has held that, because we have held inadequate a report
that the trial court found adequate, the proper disposition of this appeal is
to remand to the trial court for it to consider whether to grant Conger a
thirty-day extension to cure the defects under Section 74.351(c).  Gardner
v. U.S. Imaging, Inc., 274 S.W.3d 669, 670, 671 n.1 (Tex. 2008);  Leland v.
Brandal, 257 S.W.3d 204, 207-08 (Tex. 2008).

This
cause is reversed and remanded to the trial court for that court to decide
whether to grant a thirty-day extension under Section 74.351(c).

 

 

JIM R. WRIGHT

CHIEF JUSTICE

October 8, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Barko
v. Genzel, 123 S.W.3d 457 (Tex. App.CEastland
2003, no pet.).