

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00484-CV

**IN RE** Richard **HADDAD**

Original Proceeding[1]

Opinion by:     Velia J. Meza, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: February 25, 2026

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED; STAY LIFTED

Relator, Richard Haddad ("Haddad"), filed this petition for writ of mandamus challenging the trial court's temporary orders signed July 29, 2025, in the underlying modification proceedings. Haddad contemporaneously filed a motion for stay pending resolution of this petition, which we granted. The real party in interest, Marsha DePalo ("DePalo"), and the respondent, the Honorable Mary Lou Alvarez, filed responses in opposition to the petition for writ of mandamus. Haddad filed his reply. DePalo filed a motion for leave to file surreply, which we deny. For the reasons set forth below, we conditionally grant the petition for writ of mandamus.

---

[1]This proceeding arises out of Cause No. 2019-CI-23691, styled *In the Interest of J.P.H., a Child*, pending in the 45th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

## I.    BACKGROUND

Haddad and DePalo are the parents of J.P.H., a child born in 2014. Following an eight-day jury trial in May 2024, Haddad was named the conservator with the exclusive right to designate J.P.H.'s primary residence anywhere within the continental United States, permitting Haddad to move the child from Texas to Virginia. The final order was signed on September 16, 2024.

Haddad filed a motion to clarify rulings, which was heard on November 14, 2024. An amended order was signed on December 20, 2024. The amended order also named Haddad as the conservator with the exclusive right to designate the child's primary residence anywhere within the continental United States.

DePalo filed a motion to modify the parent-child relationship on November 26, 2024—after the November 14, 2024 hearing but before the court signed the December 20, 2024 amended order. The motion to modify did not include the affidavit required when seeking modification of the exclusive right to designate the primary residence within one year of the prior order.

On February 19, 2025, DePalo filed an affidavit in support of the motion to modify. Then, on March 5, 2025, she filed an amended motion to modify the parent-child relationship which included the February 19, 2025 affidavit.

The affidavit alleged that Haddad had not been cooperative with DePalo by, among other things, failing to answer the phone and return phone calls, not providing access to J.P.H.'s educational and medical records, and failing to add DePalo as an authorized person with respect to J.P.H. to various educational and medical providers. Although DePalo expressed "great concerns for [J.P.H.'s] emotional wellbeing and safety" she did not allege that J.P.H.'s present environment may endanger his physical health or significantly impair his emotional development.

Haddad filed a motion to deny relief in the suit to modify parent-child relationship on April 8, 2025. A hearing on the motion for temporary orders and the motion to deny was ultimately held on May 7, 2025. Haddad contended that the affidavit failed to satisfy the requirements of Section 156.102(b) of the Texas Family Code because it did not allege that J.P.H.'s present environment endangered the child's physical health or significantly impaired the child's emotional development. The trial court found that the affidavit was facially sufficient under section 156.102 and proceeded with the modification hearing.

Both Haddad and DePalo testified during the modification hearing. DePalo also called J.P.H.'s former supervised visitation provider, Misty Maldonado ("Maldonado"), and her personal therapist, Jenny Forbes ("Forbes") as witnesses. Haddad called J.P.H.'s Spanish teacher, the assistant head of school at the Montessori school that J.P.H. attended, and his wife.

Neither Maldonado nor Forbes testified to their personal knowledge of J.P.H.'s present circumstances. Maldonado was J.P.H.'s supervised visitation provider from May 2024 through August 2024. Her testimony was limited to this period, not to J.P.H.'s present circumstances. Forbes was the court-ordered individual therapist assigned to DePalo. It is unclear what period Forbes's testimony addressed. Forbes testified that she began treating DePalo in January of 2024 and that she had seen her "about six weeks shy of a year." She also claimed to have met with DePalo "approximately 31 times in the last 46 weeks." Although Forbes had reviewed some of the messages exchanged between Haddad and DePalo on the communication platform utilized by the parties, her testimony centered around allegations made by DePalo to her regarding Haddad and J.P.H. Forbes did not testify regarding her direct knowledge of J.P.H.'s present circumstances.

DePalo testified that she had difficulty accessing J.P.H.'s medical and school records, that she was not made fully aware of J.P.H.'s participation in extracurricular activities, like hockey,

karate, and taekwondo. She alleged that Haddad made derogatory remarks about her in front of J.P.H. in November of 2024 and that she had been denied visitation in December of 2024 because she had failed to take J.P.H. to hockey practice. DePalo also produced three photographs of bruising on J.P.H.'s legs. According to her, the photographs were taken in December of 2024 and April of 2025. She never asked Haddad about the origin of the bruises, but the photo exhibit was accompanied by a photograph of J.P.H. dressed in a karate karategi or taekwondo dobok while wearing a gold medal and holding up a board that had been split in half. According to DePalo, she was prompted by these bruises documented in December of 2024 and April of 2025 to file her motion to modify on November 26, 2024.

According to the judge's notes from June 6, 2025, the trial court awarded DePalo with the exclusive right to designate J.P.H.'s primary residence with a geographic restriction of Bexar County. The trial court also appointed an amicus attorney for J.P.H. and a parenting facilitator. Temporary orders were entered on July 29, 2025. The temporary orders named DePalo as the joint managing conservator with the exclusive right to receive child support payments and to designate J.P.H.'s primary residence within Bexar County. The temporary orders established two alternative possession schedules, contingent upon Haddad's residence. One schedule applied if Haddad relocated to Bexar County or to a location within twenty miles of DePalo's residence. The other schedule applied if he continued to reside more than one hundred miles from DePalo.

Haddad filed this petition for writ of mandamus on July 30, 2025. He also filed a motion for emergency stay of the temporary orders and the order appointing a parent facilitator, which we granted on August 1, 2025. We invited responses from the real party in interest and the respondent. Both the real party in interest and the respondent filed responses to the petition for writ of

mandamus. Haddad filed a reply. DePalo has filed a motion for leave to file a surreply. The motion does not allege any proper basis for a surreply and is denied.

## II.     DISCUSSION

### A.  MANDAMUS STANDARD

Mandamus relief is proper only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding). *In re Durnin*, 619 S.W.3d 250, 252 (Tex. 2021) (orig. proceeding). ("[M]andamus relief is appropriate if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy.").

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker*, 827 S.W.2d at 839. We may not substitute our judgment for that of the trial court in the resolution of factual matters unless the relator establishes that the trial court could have reasonably only reached one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 839–40. In other words, we give deference to a trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

"Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal appeal." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (internal quotation marks excluded); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008). "The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus

review against the detriments." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). The court will consider whether mandamus "will preserve important substantive and procedural rights from impairment or loss," "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgment," and whether it would spare "litigants and the public from the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id*. These interests are weighed against the detriments of mandamus review, which "unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004); *see also Id.* at 142 (Justice Phillips, Justice O'Neill, Justice Jefferson, and Justice Schneider dissenting) ("If the writ were available to correct every reversible error as it occurred in the trial court, the writ would cease to be extraordinary, and appellate courts would soon find themselves embroiled in the management of the trial court's docket."). Ultimately, whether an appellate remedy is determined adequate or inadequate must be based on the facts of each case. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 469 ("The balancing analysis we have followed for some years now merely recognizes that the adequacy of an appeal depends on the facts involved in each case.").

## B.  LAW AND ANALYSIS

### i.  The trial court abused its discretion by holding a hearing on the real party in interest's motion to modify.

A suit or motion to modify the party with the exclusive right to designate a child's primary residence filed by anyone other than the person currently vested with that right, which is filed within one year of the prior designation must be accompanied by an affidavit that alleges, along with supporting facts, that the child's present environment may endanger the child's physical

health or significantly impair the child's emotional development. *See* TEX. FAM. CODE §§ 156.006(b-1) and 156.102. The purpose of this requirement "is to promote stability in the conservatorship of children by preventing the re-litigation of custodial issues within a short period of time after the custody order is entered." *Interest of X.L.B.*, No. 04-17-00706-CV, 2018 WL 5808316, at *2 (Tex. App.—San Antonio Nov. 7, 2018, no pet.) (concurring with reasoning expressed by Dallas Court of Appeals in *In re R.C.S.*, 167 S.W.3d 145, 148 (Tex. App.—Dallas 2005, pet. denied)).

In line with this purpose, the allegations of potential endangerment to the child's physical health or emotional wellbeing must be supported by concrete facts. *Burkhart v. Burkhart*, 960 S.W.2d 321, 324 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("In view of the heightened standards for a modification hearing within one year of a custodial order, an affiant must state concrete facts that clearly demonstrate that extraordinary relief is appropriate."); *see In re C.S.*, 264 S.W.3d 864, 874–75 (Tex. App.—Waco 2008, no pet.) (comparing allegations that indicate a "pattern of parental alienation", denied access, and threats of bodily harm with a clinical psychologist's report explaining how an anticipated international move could significantly impair the child's development to establish the heighted threshold applicable to motions under Section 156.102, Texas Family Code).

The trial court is required to deny the relief sought and decline to hold a hearing on the proposed modification unless the court determines that, on the basis of the affidavit, adequate facts have been alleged to support the allegations regarding the child's physical health or emotional development. TEX. FAM. CODE § 156.006(b-1) ("The court shall deny [a motion for temporary order changing the person with the right to designate a child's principal residence] and decline to schedule a hearing on the motion unless the court determines, on the basis of the affidavit, that

facts adequate to support the allegation are stated in the affidavit"); *Id.* at 156.102(c) ("The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit.").

Here, DePalo's February 19, 2025 affidavit alleged she had been unable to effectively communicate with her son, her possession and access had been interrupted, making travel arrangements to visit her son had been difficult, she did not have access to educational records, and had limited access to her child's medical records. DePalo further alleged that her child seemed temporarily distracted and unhappy during her times of visitation, that she suspected Haddad had been attempting to alienate her, and that she had great concern for her son's emotional wellbeing and safety. None of these allegations constitute the type of concrete facts contemplated by Sections 156.006 or 156.102, Texas Family Code sufficient to warrant undermining their purpose. Thus, it was an abuse of discretion for the trial court to hold a hearing on DePalo's motion and deficient affidavit.

Our analysis does not end there.

The trial court is not required to make specific findings on the record to satisfy the requirements of section 156.006(b-1) or 156.102(c). *See In re A.L.W.*, 356 S.W.3d 564, 566–67 (Tex. App. 2011) ("[T]he trial court does not have to make a specific finding on the record that the affidavit was sufficient to warrant a hearing; the fact that the court set the hearing was, itself, proof that it regarded a filed affidavit as adequate."). Although the language of the statute seems plain, courts have consistently held that it is harmless error for a trial court to hold a hearing on a proposed modification when the required affidavit is deficient or absent, provided that adequate evidentiary support is admitted at the hearing. *See In re C.G.*, No. 04-13-00749-CV, 2014 WL 3928612, at *3

(Tex. App.—San Antonio Aug. 13, 2014, no pet.) ("even if the trial court erroneously conducts a hearing, any error is harmless if the testimony admitted during the hearing supports an allegation that the child's environment may significantly impair his or her physical health or emotional development."); *In re A.C.S.*, 157 S.W.3d 9, 18-19 (Tex. App. 2004) (trial court's decision to hold hearing on modification despite movant's failure to include an affidavit was harmless error because testimony adduced at the hearing was sufficient to make necessary findings); *see also Serafin v. Seale*, No. 03-09-00516-CV, 2010 WL 4910047, at *3 (Tex. App.—Austin Dec. 2, 2010, no pet.) (stating in dicta that it was harmless error for trial court to hold hearing on deficient affidavit because the testimony adduced at trial satisfied the requirements of section 156.002 of the Family Code).

We are left with a Catch-22 paradox—whether the trial court's decision to hold a hearing on the modification was harmless error may only be determined after consideration of the evidence adduced at that hearing. As discussed *infra*, we find that it was an abuse of discretion to hold a hearing on the real party in interest's motion to modify because the affidavit failed to satisfy the requirements of Sections 156.006 and 156.102 of the Texas Family Code and that abuse of discretion was not harmless error. *See In re Walser*, 648 S.W.3d 442, 448 (Tex. App.—San Antonio 2021, orig. proceeding) (holding that the trial court abused its discretion by having a hearing after determining that the affidavit failed to satisfy the requirements of section 156.006(b-1) because the evidence adduced at the hearing failed to satisfy the requirements of 156.006(b-1)).

ii. **The trial court abused its discretion in finding that the real party in interest met the requirements of Sections 156.006 and 156.102 of the Texas Family Code.**

Sections 156.006(b) and 156.102(b) of the Texas Family Code prohibit modification of the designation of party with the exclusive right to establish the child's primary residence within one

year of a prior such order unless the modification is necessary because the child's present circumstances or environment would significantly impair the child's physical health or emotional development. TEX. FAM. CODE § 156.006(b)(1) (temporary orders may not be issued unless "the order is necessary because the child's *present circumstances* would significantly impair the child's physical health or emotional development) (emphasis added); *Id.* at 156.102(b)(1) (the supporting affidavit must contain allegations "that the child's *present environment* may endanger the child's physical health or significantly impair the child's emotional development.") (emphasis added).

"Section 156.006 imposes a high burden on the movant to present evidence that a child's present circumstances are *significantly* impairing his or her physical health or emotional development." *In re Walser*, 648 S.W.3d at 446 (quoting *In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding)) (emphasis in original); *see also In re Eddins*, No. 05-16-01451-CV, 2017 WL 2443138, at *4 (Tex. App.—Dallas June 5, 2017, orig. proceeding) ("Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one."); *In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *2 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (same). To satisfy this standard, the movant "must present evidence of bad acts or omissions committed against the children." *In re Walser*, 648 S.W.3d at 446; *see also In re Eddins*, 2017 WL 2443138, at *4; *In re Serio* 2014 WL 7458735, at *2. Evidence of parental alienation, violations of the divorce decree, or a poor relationship between the joint managing conservators is insufficient to support a finding, whether implicit or explicit, that the child's present environment might endanger their physical health or significantly impair their emotional development. *See, e.g. In re C.G.*, 2014 WL 3928612, at *8 (evidence of a poor relationship between managing conservators and violations of the divorce decree were insufficient to support implied finding that the child's present environment may

endanger their physical health or significantly impair their emotional development); *In re Walser*, 648 S.W.3d at 446 (failure to keep movant apprised of children's doctor appointments, inconsistent responses to movant's attempts to communicate with children, and allegedly "disgusting" and cramped living conditions in a trailer house found insufficient); *In re Eddins*, 2017 WL 2443138, at \*4 (trial court finding that non-movant was "consciously or unconsciously preventing and undermining the relationship between [the children and movant] and such alienating behavior is detrimental to the short and long term emotional health of the children" failed to satisfy the requirements of sections 156.006 and 156.102); *In re C.S.*, 264 S.W.3d at 874–75 (allegations indicating pattern of parental alienation were insufficient to support finding that children's present environment might endanger their physical health or significantly impair their emotional development); *In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at \*4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (interference with communications with child and evidence that child frequently wore dirty, ill-fitting clothes and shoes while maintaining poor hygiene found insufficient).

Neither witness offered by DePalo testified to their personal knowledge of J.P.H.'s present environment or circumstances. Maldonado testified regarding interactions that ended in August of 2024. Flores primarily recounted second-hand information received from DePalo. She had no direct knowledge of J.P.H.'s present circumstances or living environment.

The testimony and evidence mustered by DePalo was also inadequate for the court to exercise its discretion to enter a temporary order that altered the designation of the parent with the right to designate J.P.H.'s primary residence. The real party in interest's testimony focused on difficulties obtaining medical and educational records—difficulties that appear to have been largely resolved—and interference with her right to communicate with J.P.H. These bases are

inadequate. See *In re Walser*, 648 S.W.3d at 446 (failure to keep movant apprised of children's doctor appointments and inconsistent responses to movant's attempts to communicate with children was insufficient to exercise its discretion to enter a temporary order under Section 156.006); *In re C.S.*, 264 S.W.3d at 874–75 (allegations indicating pattern of parental alienation were insufficient to support finding that children's present environment might endanger their physical health or significantly impair their emotional development); *In re Charles*, 2017 WL 5985524, at *4 (interference with communications with child insufficient to support modification under Section 156.006). The only evidence of any impairment to J.P.H.'s physical health or emotional development was photographs of bruises to his legs accompanied by a photo of him dressed in a karate karategi or taekwondo dobok proudly holding up a gold medal and a board that had been split in half. There was no evidence linking the bruises to any inappropriate action taken by Haddad or anyone in Haddad's household. We conclude that there was inadequate evidence to modify the designation of the party with the exclusive right to designate J.P.H.'s primary residence under sections 156.006 and 156.102 of the Texas Family Code.

iii. **Haddad lacks an adequate remedy at law or by appeal because the trial court order strips him of an important substantive right.**

It is well established that child custody determinations must be made in the best interest of the child. *See In re C.J.C.*, 603 S.W.3d 804 (Tex. 2020) ("The best interest of the child is the paramount issue in a custody determination."); TEX. FAM. CODE § 153.002(a) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). It is the public policy of the State of Texas to "provide a safe, stable, and nonviolent environment for the child". *Id.* at § 153.001(a)(2). "Thus, the Legislature balanced the rights of the parent and the best interest of the child,

recognizing that it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, stable, and nonviolent environment for the child." *In re C.J.C.*, 603 S.W.3d at 818 (internal quotation marks omitted). This is further reflected in the heightened standard required under Sections 152.006 and 156.102, which encourages stability by requiring a showing that the child is not in a safe or nonviolent environment to alter the person with the exclusive right to designate the child's primary residence within one-year of a prior such determination. *See* supra.

The trial court's order strips Haddad of possession of his child, which is an important substantive right. It would require J.P.H. to relocate from his present residence in Virginia to his mother's residence in Bexar County. This is a significant disruption and no subsequent appellate remedy could restore what is lost—time with his child. Further, the temporary order is interlocutory and thus not appealable. We find that Haddad lacks an adequate remedy at law or by appeal. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding); *In re Russell*, 321 S.W.3d 846, 853 (Tex. App.-Fort Worth 2010, orig. proceeding).

### III. CONCLUSION

The trial court abused its discretion by holding a hearing on the real party in interest's motion to modify and by entering temporary orders modifying the designation of the parent with the exclusive right to designate J.P.H.'s primary residence. We conditionally grant the relator's petition for writ of mandamus and direct the trial court to vacate its July 29, 2025 temporary orders. The writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

Velia J. Meza, Justice